Commonwealth *v.* Pitts, Appellant.

Submitted November 15, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Louis Lipschitz* and *Perry S. Bechtle,* for appellant.

*Benjamin H. Levintow* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1973:

This is an appeal from a judgment of sentence of life imprisonment imposed by the court after appellant was found guilty by a jury of the first-degree murder of Harriet Washington and appellant's post-trial motions were denied.

Appellant first contends that the Commonwealth's evidence was insufficient to establish his guilt beyond a reasonable doubt. As we have said on many occasions: ". . . the test to be applied in determining the sufficiency of the evidence is whether accepting as true all of the evidence, be it direct or circumstantial or both, and all reasonable inferences arising therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime of which he has been convicted. Commonwealth v. Rankin, 441 Pa. 401, 272 A. 2d 886 (1971)." *Commonwealth v. Williams,* 443 Pa. 85, 87, 277 A. 2d 781 (1971).

The evidence in the instant case, considered in the light of the above-stated standard, was ample to establish the following:

Mrs. Harriet Washington, an eighty-four year old woman, who lived alone, was discovered by her neighbors in a semi-conscious state at or about 7:30 a.m., on June 17, 1967. She never regained consciousness and died on July 4, 1967. The neighbors who found Mrs.

Washington, after hearing groans emanating from her bedroom, stated that they found her on the floor, covered with blood, her dress torn completely down the front. The presence of spermatozoa and the condition of her clothes established that she had been sexually assaulted. Her apartment had been ransacked with bureau drawers pulled out and furniture turned over. Officers noted that the door into the building was locked and there was no evidence of forcible entry. However, another neighbor, who resided across the street from the decedent, noticed a window screen under his car and also noticed that a screen was missing from one of Mrs. Washington's two front windows. He picked up the screen and replaced it in the window. A fingerprint of the appellant was found on the sash of this window. In addition, a number of appellant's associates testified that around midnight he was with a group of youngsters at Eighteenth and Dickinson Streets, approximately one block from the scene of the crime, and that he later left to take Sandra, a friend, to her home. Sandra and her father testified that appellant left their home before 2 a.m. He was next seen by his friend, Robert Mangum, at about 3:45 a.m., and he then had blood on his shirt, which he later changed. Several other of appellant's companions corroborated the fact that appellant changed his shirt. It was also established that he later took the pants he was wearing on the night of the crime to the cleaners.

Another fingerprint of appellant was found on the inside of an inner vestibule door, although appellant told the investigating detectives that he had never entered the premises at 1531 South Cleveland. Brenetta Kearse, a thirteen year old girl, who resided at 1516 South Cleveland Street, placed appellant in front of the Washington home, some time after midnight, June 17.

Appellant attempted to explain the presence of his fingerprints as being a result of his entering the victim's apartment, after the incident, out of curiosity. His explanation of the blood on his shirt—that he had engaged in sexual intercourse with his friend, Sandra—was vigorously denied by her and was hardly an adequate explanation for blood on his shirt. We believe that there is ample evidence to support the verdict.

Appellant contends that his in-court identification by Miss Kearse was the product of an illegal confrontation. The contested confrontation occurred on the morning of July 5, at the Police Administration Building. Appellant was then in custody, having been taken to the Police Administration Building for an arraignment on other charges. Miss Kearse had been taken to the hearing room at 9 a.m., and was instructed to observe carefully everyone who entered or left the room to ascertain whether she recognized anyone connected with the assault on Mrs. Washington. One hour later, after observing forty people entering and leaving the hearing room, she pointed out appellant, immediately following his entrance into the room, as the person she had seen near the victim's apartment at the time of the crime. There was nothing to indicate that either of the two officers who were with her suggested in any way the identity of appellant, nor was his name mentioned in the room prior to her identification. She then left the hearing room and was taken to the Homicide Division, where she made an identification of appellant's photograph, after being shown a half dozen photographs of different people.

The trial court held that this out-of-court identification was not admissible in court, because the Commonwealth could show no reason why it did not follow the procedures outlined in *United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263

(1967). However, we need not decide whether this initial identification was indeed tainted. The trial judge ruled that the in-court identification had an origin independent of the original confrontation, and we agree with that determination.

The testimony of Miss Kearse establishes that she observed Pitts on two occasions prior to the July 5 confrontation. In each instance, she had ample opportunity to observe appellant. Her identification of appellant was supported by her detailed description of his clothing. It was clear throughout Miss Kearse's testimony that her identification was fixed from her observation on June 17 and not in any way influenced by her July 5 confrontation. *Commonwealth v. Futch,* 447 Pa. 389, 290 A. 2d 93 (1972), *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970).

Appellant next raises the issue of the propriety of the trial judge's charge regarding the identification testimony of Miss Kearse. The court, following the standards we laid down in *Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A. 2d 820 (1954), charged as follows: "Now, there was testimony by one of the witnesses, a young girl by the name of Brennetta Kearse, that she saw the defendant on the night in question in the area of the home of the deceased. She made an identification. Members of the jury, I charge you that there are few more difficult subjects with which the administration of justice has to deal with than that of identification. The carelessness or superficial quality of observation and rarity of the powers of graphic description, and the different force with which peculiarities are formed or color or expression strike different persons make recognition or identification one of the least reliable facts to testify to, even by actual witnesses who have seen the parties in question. Where the witness is not in a position to clearly observe the

assailant, or he is not positive as to identity, or his positive statements as to identification are weakened by qualification, or by failure to identify on prior occasions, or by being shaken during the course of cross-examination, in those instances the testimony, as to identity, must be received with extreme caution. But where the opportunity of positive identification is good and the witness is positive in his or her identification, and that identification has not been weakened by any prior failure to identify or shaken on cross-examination but remains positive and unqualified even after cross-examination, testimony of this nature as to identification need not be received with caution, but may be, if you so find, accepted as a fact."

Appellant contends that the charge should have been limited to that portion which would have directed the jury to receive the identification testimony "with extreme caution" and there should have been omitted the portion which stated that if the jury found that all of the criteria set forth in *Kloiber* existed, the testimony "need not be received with caution, but may be, if you so find, accepted as a fact." However, appellant's argument is without merit. The question of the weight to be given to particular identification testimony is properly for the jury, once it has been told the standards set forth in *Kloiber* which it is to apply in evaluating that testimony.

Appellant next argues that the Commonwealth's evidence was insufficient to establish that Harriet Washington died as a result of the assault by appellant. Appellant argues that the two Commonwealth experts contradicted each other as to the cause of death. Dr. Campbell testified that the cause of death was head injuries and Dr. Aronson stated the immediate cause of death was the pulmonary embolism. However, Dr. Aronson traced the chain of causation in detail back to its ini-

tial link—the blows of the attacker. Thus, the jury could find that there were only minor points of difference and not absolute contradictions in the ultimate conclusion. Under any interpretation of the Commonwealth's experts, it was proved beyond a reasonable doubt that the cause of death was the blows inflicted by appellant. The law in this Commonwealth is clear: ". . . one charged with homicide cannot escape liability merely because the blow he inflicted is not mortal, or the immediate cause of death. If his blow is the legal cause, i.e., if it started a chain of causation which led to the death, he is guilty of homicide." *Commonwealth v. Cheeks,* 423 Pa. 67, 73, 223 A. 2d 291 (1966). See also *Commonwealth v. Odom,* 448 Pa. 474, 295 A. 2d 331 (1972).

Finally, appellant raises three more issues. First, he contends that the admission into evidence of night photographs was prejudicial to him because the lighting process used to take the photographs might have led the jury to believe that lighting conditions on the night in question were those represented by the photographs. However, the court cautioned the jury not to consider the pictures as an illustration of the degree of light available on the night in question, but to use the photographs merely for the purpose of visualizing the appearance and location of the various objects in the area. Under these circumstances, we do not believe that the introduction of the photographs was unfairly prejudicial to appellant. *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A. 2d 359 (1950).

Appellant also contends that the court erred in permitting the jury to take a fingerprint chart into the jury room. Matters such as these are left to the trial judge's discretion, and we fail to see any abuse of this

discretion in the instant case. Pennsylvania Rules of Criminal Procedure 1114.[1]

Lastly, appellant contends that allowing an oral surgeon, on cross-examination, to give an opinion as to the propriety of the Commonwealth's pathologist's report relating to the cause of death was error. We fail to see the possible prejudice arising from this questioning. The jury was specifically instructed that the opinion of Dr. Siparsky was not to be considered in judging the propriety or accuracy of the Commonwealth's pathologist's testimony and report.

Judgment of sentence affirmed.

Mr. Justice NIX took no part in the consideration or decision of this case.

---

[1] Although we fail to see any abuse of discretion, it would be a better procedure not to allow exhibits into the jury room which require expert interpretation.