567 A.2d 1376

COMMONWEALTH of Pennsylvania, Appellee,

v.

Reginald S. LEWIS, Appellant.

Supreme Court of Pennsylvania.

Argued April 12, 1989.
Decided Dec. 22, 1989.

468

470

Donald Michael Padova, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Donna Zucker, Asst. Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADOKAS, JJ.

## OPINION

NIX, Chief Justice.

In this appeal, the Court is required to review a sentence of death imposed on the appellant, Reginald S. Lewis, after a jury found him guilty of the first degree murder of Christopher Ellis in the Oxford Bar on November 21, 1982.[1] The appellant raises fourteen counts of error for considera-

---

**1.** The issue briefed at the request of this Court, concerning whether the direct appeal from a death penalty pursuant to 42 Pa.C.S. § 9711(h) can be quashed under Pa.R.A.P. 1972(6) because the appellant was a fugitive, need not be addressed at this time since the Commonwealth withdrew its motion to quash, upon the recapture of the appellant. This question of first impression would be better resolved in a case wherein the appellant's escape actually results in a disruption of the appellate process. Also, the issue of quashing the direct appeal from a death penalty requires a more in-depth record and review than the present case permits.

tion. After a thorough review of the record in this case, it appears that none of the appellant's claims are meritorious or would require this court to vacate the present sentence. Therefore, the judgment of sentence entered by the Court of Common Pleas of Philadelphia County must be affirmed.

As in all capital cases this Court is first required to review the sufficiency of the evidence to determine whether there was the necessary evidence to support the conviction, regardless of whether the appellant has challenged the conviction on that ground. 42 Pa.C.S. § 9711(h); *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075 (1987); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for establishing the sufficiency of the evidence has been defined as follows:

> Where a defendant challenges his conviction on appeal, the test of sufficiency of evidence is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson*, 506 Pa. 469, 473, 485 A.2d 1102, 1103 (1984); *see also, Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). The evidence produced by the Commonwealth in this case unquestionably meets the prescribed standard and would support the conviction for first degree murder.

At approximately 6:30 on November 21, 1982, Christopher Ellis was brutally stabbed nine times by a man wielding a butcher knife in the Oxford Bar located on Oxford and Sixth Streets in Philadelphia. The stabbing was observed by all of the patrons of the bar, including the group that accompanied Mr. Ellis to the bar to celebrate one of the members' birthday. The police showed each of the witnesses a photo-array of eight pictures, and each identified the appellant's picture as the one who had committed the mur-

der. Subsequently, when the police arrested the appellant for shoplifting in Strawbridge and Clothier department store, he had assumed the name of Booker T. Beatty, Jr. While still in police custody on that charge, the appellant was arrested pursuant to an outstanding warrant and charged with the murder of Christopher Ellis.

At trial, the prosecution produced six eye-witnesses [2] who identified the appellant as the one they had seen commit the murder. Each witness had been familiar with the appellant, as a person who "hung around" the neighborhood. They all knew him by his first name only, "Reggie" or Reginald. There was also testimony that frequently the appellant was seen wearing clear lens, "schoolboy" glasses prior to the incident, similar to the glasses dropped by the assailant at the scene of the murder. Hattie English testified that the appellant and the victim were arguing over a five dollar debt the victim allegedly owed the appellant immediately prior to the stabbing.

The bartender, Harold Whealton, testified that the assailant was a previous customer at the bar and had a girl friend named Stephanie, who was pregnant at the time and lived on the 1600 block of Marshall Street. The Commonwealth produced the appellant's fiancee, Stephanie McCorey, who testified she was pregnant at the time of the incident and had previously resided at 1610 N. Marshall Street. Mr. Whealton also testified the appellant approached him the next day and told him not to mention the appellant's name with regard to the incident. In defense of this charge, the appellant maintained he was in San Diego visiting his brother at the time of the incident and therefore had an alibi. In support of this claimed alibi defense, appellant produced his brother and other family members to corroborate the story.

In order to establish murder in the first degree, the Commonwealth must prove that the actor specifically intended to kill which, in turn, is shown by proving premedita-

---

**2.** The eye-witnesses for the Commonwealth consisted of Hattie English, George English, Alan Watson, Idella Johnson, Denise Reed and the bartender, Harold Whealton.

tion and deliberation. *Commonwealth v. Garcia*, 505 Pa. 304, 310, 479 A.2d 473, 476 (1984). It is clear from the facts as presented at trial that the Commonwealth produced sufficient evidence to support a conviction for first degree murder. Here, there were numerous eye-witnesses identifying the appellant as the murderer. There was also circumstantial evidence which connected appellant to the crime: the glasses left at the scene and the appellant's pregnant fiancee was named Stephanie.

The Commonwealth, as verdict winner, is afforded the inference that the specific intent required for first degree murder can be proven by the conduct of the perpetrator, including the use of a deadly weapon on a vital part of the body. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). In this case the victim was stabbed in the chest nine times with a deadly weapon. The cause of death was determined to be a stab wound to the heart. Further, the testimony concerning the argument between the appellant and the victim supports this inference of specific intent.

The Commonwealth is also afforded an inference regarding the appellant's consciousness of guilt through the use of an alias upon arrest. *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964). Here, when the police arrested him, the appellant identified himself as Booker T. Beatty, Jr. Therefore, the Commonwealth clearly provided enough evidence to support the conviction issued by the jury with the direct evidence, the circumstantial evidence and the permissive inferences. While the appellant maintained that he was not in Philadelphia at the time, a jury's refusal to believe his alibi witnesses would not be unreasonable. It appears that the jury did so refuse and it entered a verdict of guilty. Because of the overwhelming evidence to support the verdict, this Court is constrained to find there was sufficient evidence to support the verdict.

We next turn to a consideration of appellant's various claims of error by the trial court.

First, this appellant raises several claims as to the jury selection process. The appellant argues that the trial judge improperly excluded venirepersons for cause without sufficient basis under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, the decision whether to disqualify a juror is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. *Commonwealth v. Hardcastle*, 519 Pa. 236, 256, 546 A.2d 1101, 1110 (1988); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Specifically, the appellant questions the exclusion for cause of four venirepersons; Elizabeth Gowens, Philomena Banks, Dorothy Jaworski and Anna Snead, based upon their opposition to the death penalty. The United States Supreme Court, in *Witherspoon*, required jurors to state clearly their opposition to the death penalty and that such opposition would interfere with their ability to vote for such a penalty before they could be struck from the jury for cause. 391 U.S. at 522, 88 S.Ct. at 1776. The appellant argues that these venirepersons were not of a "fixed opinion" as to the imposition of the death penalty and were therefore improperly excluded. These claims lack merit for at least three reasons.

Initially, it should be noted that the standard set forth in *Witherspoon* to be applied when excluding jurors for cause is no longer the appropriate criteria in this Commonwealth. As this Court recognized in *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987), the United States Supreme Court chose the test set forth in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), as preferable to the original standards of *Witherspoon*. *Peterkin* at 311, 513 A.2d at 378. The standard set forth in *Adams v. Texas* provides that a juror should be struck for cause when the juror's views toward the death penalty

would substantially impair or prevent the juror from performing his duties.    448 U.S. at 45, 100 S.Ct. at 2526.

In this case, the appellant argues that the responses of the four potential jurors regarding the death penalty were ambiguous or were insufficient to justify exclusion under the *Witherspoon* standard.   Elizabeth Gowens replied that she "would have great difficulty" voting for the death penalty under any circumstances.   Philomena Banks stated, "[B]ecause of my religion, I might not be able to vote for that [death penalty]."   Dorothy Jaworski and Anna Snead both stated that they had a "fixed opinion" against the death penalty and capital punishment.   Although the appellant would require a more in-depth inquiry into the "fixed opinion" of the venirepersons, it appears from their responses to the death qualification questions that exclusion under *Adams v. Texas* would be justified.   Therefore, such exclusions for cause were proper.

Additionally, the claims by the appellant with regard to the possible improper exclusions for cause were waived by the defendant's approval of the jury and failure to preserve these claims of error at the trial court.   Although waiver of any claim in a capital case appears to be contradictory to the relaxed waiver rules afforded these appellants through *Zettlemoyer*, the case law of this Commonwealth is clear.   This Court has repeatedly held that *Witherspoon* claims are waivable.   *Commonwealth v. Peterkin, supra; Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984).[3]

---

3.   The appellant also raises a claim that the Commonwealth improperly excluded potential jurors with peremptory challenges because of the race of the juror.   There does not appear to be enough in this record to address the claim given appellant's failure to identify specific veniremen or specific parts of the record in support of his allegation.   Therefore, absent a prima facie showing of improper use of peremptory challenges by the Commonwealth, this claim could not provide a basis for this Court to vacate the judgment of sentence of death imposed by the Court of Common Pleas of Philadelphia County. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988), *citing Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ Finally, assuming arguendo that there was error in excluding some of the jurors for cause, such an error is harmless in light of the fact that the Commonwealth had seven peremptory challenges left after the jury was selected. Had the jurors not been struck for cause, the Commonwealth could have peremptorily struck the four jurors with the remaining challenges. Therefore, the appellant's claims of error based upon *Witherspoon* violations are meritless.

■ The appellant also raises as error the death qualification process used by the Commonwealth. First, the appellant argues that a death qualified jury is conviction prone and therefore violative of the appellant's right to a fair cross-section of the community. However, that argument has been firmly rejected by this Court, over this writer's dissent, in numerous cases. *Commonwealth v. Aulisio, supra; Commonwealth v. Szuchon, supra; Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309, *cert. denied,* 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984).

■ Second, appellant raises as error the exclusion of jurors based upon their religious beliefs. He argues that, because the death qualification question mentions religion, the jury selection violated Article I, Section 4 of the Pennsylvania Constitution, which provides:

No person who acknowledges the being of a God and a future state of rewards and punishment shall, on account of his religious sentiments, be disqualified to hold any office or place of trust or profit under this Commonwealth.

The question posed to each potential juror and at issue in this case was substantially: do you have any religious, moral, or philosophical scruples which would prevent you from voting for the imposition of the death penalty in a proper case? That question clearly goes to the venireperson's ability to properly perform the duties required in a case where a verdict of first degree murder is being considered. Although exclusions based solely upon religious beliefs could be violative of the constitution, exclusions

based upon this question are not concerned with religion, and least of all the religion of of the venireperson. They are directed to the ability of that person to accept the responsibility of a juror. Moreover, as stated above, the trial court has broad discretion to exclude jurors for cause when it believes that the juror cannot fulfill the obligation to be fair and impartial. *Commonwealth v. Colson, supra.* Therefore, the appellant's claim that such exclusions violate the Constitution of this Commonwealth is meritless.

Next the appellant claims error based upon certain evidence admitted by the trial judge. The appellant asserts that the trial judge erred in requiring the appellant be viewed wearing the glasses found at the scene of the murder while standing next to a blown-up photograph of the appellant wearing similar glasses. The appellant argues that such a demonstration was excessively suggestive and prejudicial. It is well established that the trial court is granted broad discretion in deciding to allow or disallow the Commonwealth to conduct demonstrations in which a defendant participates. *Commonwealth v. Laniewski,* 427 Pa. 455, 235 A.2d 136 (1967); *see also, Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983). With such discretion the trial judge must weigh the probative value of the demonstration against the possible prejudice to the defendant. *See, Commonwealth v. Benaglio,* 254 Pa. Super. 100, 103, 385 A.2d 544, 546 (1978).

In this case the glasses found at the scene, and the style of glasses the witnesses described as having been worn by the appellant previously, became directly in issue because appellant denied ever owning a pair of glasses of that style. The photograph, taken prior to the incident,[4] clearly depicts the appellant wearing that style of frame. While appel-

---

4. The photograph presented by the Commonwealth was taken by a police photographer when the appellant registered in Philadelphia as a probationer from a murder conviction in New Jersey. The circumstances surrounding the photograph were carefully concealed by the Commonwealth so as not to indirectly admit evidence of the previous murder conviction. The officer who took the photograph was called to testify as to the authenticity of the photograph but was introduced as a professional photographer.

lant's claim of prejudice is valid because the demonstration increased the likelihood that he was the assailant, in the light of the probative value of the glasses and the authenticity of the blown-up photograph, established through the photographer, it cannot be said that the appellant was *unfairly* prejudiced by the demonstration. *Benaglio, supra.*

The appellant also claims that the trial judge erred in excluding the post-arrest statement given to the police in which the appellant stated that he was in San Diego at the time of this murder. The appellant sought to introduce this statement to provide previous consistent testimony concerning his alibi defense. The trial judge excluded this evidence on the ground that it was impermissible hearsay. The case law of this Commonwealth supports the trial judge's decision. In *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981), this Court specifically stated, "[w]here a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts, such testimony is clearly offensive to the hearsay rule." *Id.* at 43, 425 A.2d at 356. Thus the post-arrest statement was properly excluded.

Further the appellant argues that the trial judge improperly allowed a picture of the scene of the crime to go out to the jury during deliberation. The basis of this claim of error is that a blood stain on the barroom floor was visible in the picture and thereby could inflame the jury. The court is permitted to send photographs of the scene to the jury if the photograph is relevant and it is not such that it would inflame the passions of the jury. *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978); *see also, Commonwealth v. Hammond*, 308 Pa.Super. 139, 149, 454 A.2d 60, 65 (1982). If the photograph is judged non-inflammatory, it is admissible if it is relevant and can assist the jury in understanding the facts. *Garcia*, 505 Pa. at 313, 479 A.2d at 478. The fact that blood is visible does not necessarily require a finding that a photograph is inflamma-

tory. *Commonwealth v. Hudson,* 489 Pa. 620, 631, 414 A.2d 1381, 1387 (1980).

■ In this case, the photograph in question was in black and white and showed only a dark stain on the floor in the lower left corner of the photograph. The photograph prominently depicted the location of the glasses found at the scene. The trial court permitted the photograph to be given to the jury, after the jury requested all of the evidence admitted at trial. Both attorneys participated in determining what evidence would be presented to the jury. After some argument, the trial judge permitted this picture along with other evidence admitted at trial, but removed another similar picture which showed more of a blood stain and refused to allow any evidence that was in writing to go to the jury.[5] Such rulings were consistent with the above case law and clearly within the discretion of the trial judge, *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973).

■ During trial, the appellant moved for a mistrial based on the grounds that a juror had seen the appellant disembark from the sheriff's van in handcuffs, arguing that such a sighting could prejudice the juror against him, thereby destroying the presumption of innocence. The trial judge denied the motion and stated that the incident appeared to be inadvertent, the jurors knew the appellant was in custody and therefore could expect to see the appellant in handcuffs. Appellant now claims that such a ruling was error and a mistrial should have been declared. Mistrials should be granted "only when an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial." *Commonwealth v. Chestnut,* 511 Pa. 169,

5. The appellant also argues that the trial judge improperly excluded from the jury the defendant's mother's telephone bill which had a collect call from San Diego, presumably to support the defendant's alibi defense. Appellant presented testimony at trial which attempted to establish that he actually placed the call. However, the trial court ruled nothing in writing would be permitted to enter the deliberations of the jury. Such a ruling is clearly within the discretion of the trial judge. *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973). Therefore, appellant's claim that the trial judge erred in excluding the telephone bill is unsupported by the case law.

176, 512 A.2d 603, 606 (1986); *Commonwealth v. Hernandez*, 498 Pa. 405, 446 A.2d 1268 (1982). Not every observation of a defendant in handcuffs by members of the jury is so inherently prejudicial as to require a mistrial. *Commonwealth v. Evans*, 465 Pa. 12, 15, 348 A.2d 92, 94 (1975). In this case, the trial judge and both attorneys examined the juror after the incident and agreed that he need not be replaced by one of the alternates. The trial judge correctly concluded that the incident would not have an effect on the juror's ability to reach a fair result, and permitted the trial to continue.

Therefore, there being sufficient evidence produced by the Commonwealth to support a verdict of first degree murder and the appellant having failed to present this Court with any valid reason for a new trial to be granted, the conviction of first degree murder is affirmed.

Finally, this Court must independently assess the appropriateness of the sentence of death. 42 Pa.C.S. § 9711(h)(3). *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984); *Commonwealth v. Zettlemoyer, supra*.

The Commonwealth presented the jury with one aggravating circumstance, specifically, "[T]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." In support thereof, the Commonwealth produced evidence of a previous first degree murder conviction and a conviction for assault with a deadly weapon against a policeman from the state of New Jersey. It also presented evidence of a prior aggravated assault conviction in Pennsylvania. From this evidence, it appears that the Commonwealth more than sufficiently established the appellant's history of felony convictions involving the use or threat of violence.[6]

6. We note that the appellant has been subsequently convicted of murder and sentenced to death arising from an altercation while incarcerated on this offense. That matter, on appeal before this Court, is awaiting oral argument.

■ The appellant argues the sentence imposed by the jury must be vacated because the trial judge improperly instructed the jury as to aggravating and mitigating circumstances.[7] The claim of error here relates to the trial court's use of and reference to a written list of the aggravating and mitigating circumstances to be considered by the jury. During the charge to the jury, the trial judge stated, "[t]he Commonwealth is emphasizing the small letter i, which I have read to you and, of course, the defense is denying that that fits under the circumstances. It will be for you to make that decision." (N.T. 1387) The appellant argues that, while this Court in *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985), permitted written instructions that were neutral and unambiguous, the trial court's reference to the aggravating circumstance relied upon by the Commonwealth and comments regarding the defense's position at the penalty phase took the written form beyond a neutral document.

In this case, it appears that the trial judge was attempting to facilitate the jury's use of the form through examples relevant to this case. In fact the trial judge made it clear that the jury could rely on any mitigating factors listed as well as any aggravating circumstances found by the jury:

Now, if you should find both aggravating and mitigating circumstances, then you would go to the second block and there you would put in the ones that are aggravating circumstances you found, and on page 3, I have here a list of what is called *mitigating circumstances, and, if you should find any of them, or whatever ones you find, you will put an "X" there and bring it over to the front and put it in there.* (Emphasis added.)

(N.T. 1386)

---

7. The appellant also argues the unconstitutionality of the death statute because it fails to allow jurors to consider mercy. However, this Court has repeatedly addressed this issue and found the statute to be in accordance with both the United States Constitution as well as the Constitution of this Commonwealth. See, *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). *See also* p. 1384 *infra.*

The appellant's argument does not recognize jurors may require further explanation of the written list to avoid confusion. *Commonwealth v. Kelly,* 484 Pa. 527, 529, 399 A.2d 1061, *cert. denied* and *appeal dismissed,* 444 U.S. 947, 100 S.Ct. 417, 62 L.Ed.2d 317 (1979). Here, the trial judge properly stated the jury could find any mitigating circumstance or any aggravating circumstance regardless of the positions of either the Commonwealth or the defense. *Commonwealth v. Rolan,* 520 Pa. 1, 549 A.2d 553 (1988); *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *cert. granted,* — U.S. ——, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *Commonwealth v. Moser,* 519 Pa. 441, 549 A.2d 76 (1988); *Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986).

■■■ This Court must further determine whether the sentence of death imposed by the jury in this case is excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii). In making this determination we rely on the information accumulated by the Pennsylvania Death Penalty Study, formulated pursuant to our mandate in *Commonwealth v. Frey, supra,* which reviews all cases resulting in a conviction for first degree murder since September 1978. After a review of the information regarding previous convictions involving the aggravating circumstance of a significant history of felony convictions, it is clear that a sentence of death in this case is not excessive or disproportionate to similarly decided cases. Actually, given the language of the present Act, and the appellant's record, the sentence of death would be the only appropriate sentence in this case. 42 Pa.C.S. § 9711(c)(1)(iv).[8] We recognize that this statutory provision is under constitutional scrutiny before the United States Supreme Court, *Commonwealth v. Blystone,* 519 Pa. 450,

8. 42 Pa.C.S. § 9711(c)(1)(iv) provides:
(iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

549 A.2d 81 (1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989). However, the facts of this case are such that it is virtually impossible to conclude the death sentence was imposed solely as a result of this mandatory provision.

Therefore, in light of the information concerning the appropriateness of this sentence provided by the death penalty study, our satisfaction that the Commonwealth provided sufficient evidence to establish the aggravating circumstance alleged and the absence of error in the instructions to the jury, this Court is constrained to affirm the penalty of death imposed upon this appellant by the jury.

Judgment of sentence is affirmed.[9]

9. The Prothonotary of the Eastern District of Pennsylvania is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by the Court to the Governor. 42 Pa.C.S.A. § 9711(i).