J-A25001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRYANT YOUNG, | : | |
| | : | |
| Appellant | : | No. 3027 EDA 2014 |

Appeal from the Judgment of Sentence October 2, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0006568-2013

BEFORE: DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED OCTOBER 20, 2015**

Appellant, Bryant Young ("Young"), appeals from the judgment of sentence entered on October 2, 2014 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of first-degree murder, carrying firearms on public streets or public property in Philadelphia, attempted murder, and aggravated assault.[1] After careful review, we affirm.

On July 11, 2011, around 2:00 a.m., Young approached, and subsequently shot and killed, Raheem Cropper ("Cropper") near the intersection of Clearfield and Carlisle Streets in Philadelphia, Pennsylvania. While in the act of killing Cropper, Young also shot Harriet Banks ("Banks") and attempted to shoot Theodore Williams ("Williams"). On May 2, 2012,

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6108, 901(a), 2702(a).

*Former Justice specially assigned to the Superior Court.

Young was arrested and charged with first-degree murder and several other related offenses. On September 30, 2014, Young elected a trial by jury. At trial the Commonwealth presented the testimony of four witnesses who were present at the scene of the shooting – Williams, Banks, Jerry Logan ("Logan"), and Lorenzo Evans ("Evans"). Each of these witnesses provided statements to police about Cropper's murder shortly following his death. In these statements, Williams and Evans each identified Young as the shooter. During their testimony at trial, however, each recanted their identification of Young. The trial court accurately summarized the evidence provided by the four witnesses at trial and in their police statements as follows:

> On July 11, 2011, shortly after [2:00 a.m.], [Williams testified that he] was at Clearfield and Carlisle Streets in Philadelphia, where his friend, [Cropper], had just been shot. He moved Cropper into a white car belonging to [Evans, who] he knew as Spank, and they took Cropper to the hospital. Prior to the shooting, he had been sitting near Cropper and [Evans], who were socializing near the curb at the intersection of Clearfield and Carlisle Streets. Williams was looking at his phone when he heard the shots, and he ran in response to them.
>
> After he took Cropper to the hospital, Williams was taken to the Homicide Division of the Philadelphia Police Department to make a statement. In his statement, he said that he saw a young man named Munch approach Cropper prior to his death, and that some women who were hanging out nearby called out the name "Munch" as he approached. He heard the initial shots and ran from the porch, saw Cropper on the ground and heard him ask to be taken to the hospital. He then saw Munch shoot Cropper with a revolver while Cropper was prone.

Munch then aimed the gun at Williams and pulled the trigger, and the gun made a clicking sound, indicating that it was no longer loaded. Then Munch ran away and Williams and [Evans] started moving Cropper into the car to take him to the hospital. In his statement, Williams identified a photograph of [Young] as being the person he knew as Munch. At trial, [Williams] refused to acknowledge the veracity of his statement, and testified that he was there under duress and did not want to testify, that his family lives in Philadelphia, and that he did not want to have a "beef" with anybody.

[Banks testified that she] lives on 15th and Clearfield Streets, near the site of the shooting. She knew [Cropper] for the entirety of his life and considered him to be a family member, though they were not related. She and her cousin Bernadette were sitting outside of a deli three doors down from where [Cropper] was sitting on the night of the shooting. When she heard shots, she initially thought them to be firecrackers, as someone in the neighborhood had been lighting firecrackers earlier in the day. Then she felt the sensation of heat hitting her calf, and she ran east down Carlisle Street. She heard approximately five gunshots. In a statement to Homicide detectives, she gave a description of a young man she spoke with briefly just prior to the shooting, who then returned and shot [Cropper]. She described him as tall, slim, and brown-skinned, and wearing a long-sleeved dark shirt. She then identified [Young] as the young man she had spoken with … from a set of eight photographs.

Jerry Logan [testified that he] also lived in the area of the shooting and knew the decedent from his youth. He was talking with [Cropper] at the time of the shooting. He saw [Cropper] begin to run, and he ran toward him. Then [Cropper] fell, and he saw the shooter fire at him while he was lying down. He heard approximately five shots and thought the gun was a revolver. Logan then helped load [Cropper] into a car to be taken to the hospital. He never saw

the shooter's face, as his back was to the shooter when the first shot was fired, and the shooter had his back to Logan when he shot [Cropper] on the ground.

When Logan was taken to the Homicide division to give a statement, he gave the following description of the shooter: "He was tall, low haircut, about six-two. I'm five-ten and he was taller than me. He was dark skinned. I think he had a light brown pair of pants. I didn't pay too much attention to his clothes. He was in his early 20s."

Lorenzo Evans is [Cropper]'s older cousin. Evans was sitting with [Cropper] on the night of the shooting. Evans began to run when he heard the first shot. He testified that he did not see the shooter or the gun, but he heard approximately six shots.

Previously, in a statement given to Homicide detectives hours after the shooting, he said that someone named "Munch" had spoken with the decedent an hour or two before the shooting, and that there had been tension when he was there. Evans said that Munch came back later and shot the decedent. He identified [Young] as "Munch" from an array of eight photographs.

Trial Court Opinion, 12/24/14, at 2-4 (footnotes and record citations omitted).

On October 2, 2014, the jury found Young guilty of the above-referenced crimes.[2] Young waived a presentence investigation and the

---

[2] Young had also been charged with persons not to possess firearms (18 Pa.C.S.A. § 6105(a)(1)), firearms not to be carried without a license (18 Pa.C.S.A. § 6106(a)(1)), simple assault (18 Pa.C.S.A. § 2701(a)), and recklessly endangering another person (18 Pa.C.S.A. § 2705). These charges were nolle prossed.

parties proceeded to directly to sentencing. The trial court imposed a sentence of life imprisonment without the possibility of parole on the first-degree murder charge, with concurrent terms of ten to twenty years of incarceration on the attempted murder charge and one to two years of incarceration on the carrying firearms on public streets or public property in Philadelphia charge.[3] On October 7, 2014, Young filed a post-sentence motion, which the trial court denied on October 15, 2014. On October 26, 2014, Young filed a timely notice of appeal. On November 6, 2014, the trial court ordered Young to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On December 15, 2014, after receiving an extension of time, Young filed a timely Rule 1925(b) statement.

On appeal, Young raises the following issues for our review:

> 1. Whether the evidence was insufficient to establish [Young]'s guilt beyond a reasonable doubt on all charges, in the absence of any direct or sufficient circumstantial link connecting [Young] to the shooting, where: [Young] was observed at the scene [forty] minutes prior to the shooting driving a burgundy-colored truck, as opposed to the shooter's gold-colored car; he was observed shaking hands with the decedent, showed no animosity toward him, and there was no evidence of motive whatsoever; where each of the Commonwealth's four (4) fact witnesses unequivocally testified at trial that they did not see the shooter; where the two (2) witnesses who identified [Young] as "Munch" in their pretrial

---

[3] The aggravated assault charge merged with the attempted murder charge for purposes of sentencing.

police statements (Messrs. Williams and Evans) did so expressly based on: (a) information provided by others as opposed to personal knowledge; (b) information provided by detectives; (c) coercion by detectives to provide information in their statements that they did not witness; and (d) explicitly based on the "assumption" that [Young] was the shooter merely because he was observed at the scene [forty] minutes earlier; and further, in circumstances where the factors pertinent to accuracy/reliability of identification overwhelmingly demonstrate that the identification at bar is utterly unreliable and insufficient as a matter of law?

2. Whether the verdict on all charges was against the weight of the evidence where the identification of [Young] was patently weak and inconclusive given that the only evidence tying [Young] to the shooting was vacillating and unreliable pretrial identifications of [Young] as "Munch," where the identification of [Young] explicitly was based on sheer speculation, i.e., the assumption that he was the shooter merely because he had been on the block forty minutes earlier, and where each of the Commonwealth's four fact witnesses testified that detectives in this case altered their statements, put words in their mouth, physically exhausted them and or flat out forced them to sign off on things they simply did not see?

3. Whether the trial court abused its discretion by permitting, over defense objection, Detective Harkins to reread the entire police statement of Harriet Banks, as opposed to limiting it to its prior inconsistent portions, where the Commonwealth already had read into evidence large portions of Ms. Banks['] police statement during her examination, and where the rereading of her statement comprised cumulative evidence to the prejudice of [Young], particularly in a case where the Commonwealth's evidence was so weak?

4. Whether the trial court abused its discretion by providing the jury with Mr. Evans' entire police

statement, over defense objection, in lieu of instructing the jury to rely on their own recollection and without any alternative evidence, where such one-sided presentation of evidence to the jury during its deliberation skewed the importance of evidence, resulting in an unfair trial?

Young's Brief at 5.

For his first issue on appeal, Young claims that the evidence was insufficient to support his convictions. *Id.* at 18-21. Specifically, Young argues that the Commonwealth failed to prove his identity as the shooter beyond a reasonable doubt. *Id.* at 18. In support of this argument, Young provides several reasons why the eyewitness testimony identifying Young as the perpetrator of the crime was unreliable. *See id.* at 18-21. Young relies heavily on Williams and Evans, who identified Young as the shooter in police statements, recanting their prior identification of Young at trial and the inability of any other witness to identify Young as the shooter. *Id.* at 19-20.

These arguments challenge the weight of the evidence, not its sufficiency. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence."); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) ("variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence").

> The distinction between these two challenges is critical. A claim challenging the sufficiency of the

evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, *Tibbs v. Florida*, 457 U.S. 31 (1982); *Commonwealth v. Vogel*, 461 A.2d 604 (Pa. 1983), whereas a claim challenging the weight of the evidence if granted would permit a second trial. *Id.*

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *Commonwealth v. Santana*, 333 A.2d 876 (Pa. 1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Chambers*, 599 A.2d 630 (Pa. 1991).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Tibbs*, 457 U.S. at 38 n.11.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations modified).

Our Supreme Court has held that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009) (finding that a sufficiency claim raising weight of the evidence arguments would be dismissed). Therefore, Young is not entitled to any relief for his challenge to the sufficiency of the evidence to support his convictions.

Moreover, the evidence, viewed in the light most favorable to the Commonwealth, was clearly sufficient to identify Young as the shooter. In the argument section of his appellate brief, Young concedes that Williams and Evans identified him as the shooter. *See* Young's Brief at 19. Additionally, the certified record reflects that Williams and Evans each told police following the shooting that Young was the shooter in this case. *See* N.T., 9/30/14, at 88-112, 243-56. In evaluating the sufficiency of the evidence, "the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc), *appeal denied*, 95 A.3d 277 (Pa. 2014). Here, based on its verdict, the jury clearly believed the statements Williams and Evans gave to police that Young was the perpetrator of the murder in this case. Contrary to Young's assertion, the mere fact that Williams and Evans "recanted

[statements they] had previously made to the police certainly does not render the evidence insufficient to support [Young]'s conviction." **See Commonwealth v. Hanible**, 836 A.2d 36, 39 (Pa. 2003).[4] Accordingly, Young's sufficiency of the evidence claim fails.

For his second issue on appeal, Young properly argues that the verdict in this case was against the weight of the evidence.[5] When reviewing a weight of the evidence claim, we consider the following:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Widmer**, 744 A.2d at 751-52; [**Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994)]. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" [**Id.**] (citation omitted). It has often been stated that "a

---

[4] Young relies on **Commonwealth v. Brown**, 711 A.2d 444 (Pa. 1998), and **Commonwealth v. Wiley**, 432 A.2d 220 (Pa. Super. 1981), in asserting that a conviction cannot rest on evidence that establishes only a fifty percent probability of guilt. **See** Young's Brief at 20. **Brown** and **Wiley** are inapplicable here, where Williams' and Evans' police statements, which the jury clearly credited, established a likelihood of guilt far greater than fifty percent.

[5] An appellant must preserve a challenge to the weight of the evidence before the trial court either at sentencing or in a post-sentence motion. Pa.R.Crim.P. 607(A); **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014). Here, Young preserved his challenge to the weight of the evidence in his motion for post-verdict/sentence relief. **See** Motion for Post-Verdict/Sentence Relief, 10/7/14, ¶ 3.

new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown***,* 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations

modified). Thus, our task in evaluating a weight challenge is as follows:

> To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not however, as the trial

- 11 -

> judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

**Brown**, 648 A.2d at 1190 (citation omitted).

Young argues that the jury's verdict was against the weight of the evidence because all four of the Commonwealth's fact witnesses (Williams, Banks, Evans, and Logan) testified at trial that they did not see the shooter, which differed, in the case of Williams and Evans, from their identifications of Young as the shooter immediately following the shooting. **See** Young's Brief at 22-28. Additionally, Young asserts that each of the four witnesses' trial testimony indicates that the police in some manner coerced them into naming Young as the shooter or that the police otherwise "doctored" their statements. **Id.** Therefore, Young contends that none of the four witnesses' statements to police were reliable.

The certified record reflects the following. The jury heard testimony from Williams that the police answered the questions they posed to Williams for him and that they kept Williams for thirteen to fourteen hours, not letting him leave until he signed a statement. N.T., 9/30/14, at 115-17. The jury also heard testimony from Banks that the information the police included in her statement differed from what she had told them. **Id.** at 165-66, 173-

74. The jury further heard testimony from Logan that the police kept trying to coach him while he was giving his statement. *Id.* at 194. The jury finally heard testimony from Evans that he originally told the police that he could not identify the shooter, but that the police told him "that shit wasn't good enough" and that the police then coerced him into naming Young as the shooter. *Id.* at 229, 260-64.

In response to these allegations, the Commonwealth presented the testimony of Detective John Harkins ("Detective Harkins") and Detective Kenneth Rossiter ("Detective Rossister"), the homicide detectives assigned to this case. N.T., 10/1/14, at 179. Detectives Harkins and Rossiter were responsible for taking the witness statements in this case. *See id.* at 179-208, 218-30. Both detectives testified that they did not threaten or coerce any of the witnesses when taking their statements and that the statements they took from the witnesses were the witnesses' own words. *Id.* at 207-08, 229-30. Ultimately, the jury determined that despite the allegations of police misconduct, each of the four witnesses' police statements were credible.

"It is well established that this Court is precluded from reweighing the evidence and substituting our credibility determination for that of the fact-finder." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to

- 13 -

determine the credibility of the witnesses." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015). As the factfinder, the jury had the responsibility of determining whether these factors affected the credibility of the police statements. By convicting Young, the jury demonstrated that it believed all or some of each of Williams', Banks', Logan's, and Evans' police statements and that it found credible the testimony of Detectives Harkins and Rossiter. Moreover, our review of the record reveals that each of the four eyewitnesses' police statements of the events that transpired during the shooting, cited hereinabove, were largely consistent with one another. ***See*** N.T., 9/30/14, at 85-112, 144-78, 186-96, 244-58. Therefore, based on our review of the record, the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence.

For his third issue on appeal, Young argues that the trial court erred by permitting Detective Harkins to reread Banks' entire police statement into evidence after the Commonwealth had already read into evidence large portions of it during Banks' direct examination. ***See*** Young's Brief at 28-35. Young asserts that, because the Commonwealth had already read Banks' statement into evidence, there was no need to have Detective Harkins reread it to the jury. ***Id.*** at 28-29, 35. Young contends that by allowing Detective Harkins to reread Banks' entire statement, the trial court permitted purely cumulative evidence that was prejudicial to him because, in his view, the evidence in this case was tenuous. ***Id.***

Our standard of review regarding evidentiary issues is as follows:

> "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." **Commonwealth v. Sanchez**, 36 A.3d 24, 48 (Pa. 2011) (citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Hanford**, 937 A.2d 1094, 1098 (Pa. Super. 2007) (citation omitted), *appeal denied*, [] 956 A.2d 432 (Pa. 2008). Furthermore, "if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." **Commonwealth v. Weakley**, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted), *appeal denied*, [] 986 A.2d 150 (Pa. 2009).

**Commonwealth v. Glass**, 50 A.3d 720, 724-25 (Pa. Super. 2012).

Regarding cumulative evidence, this Court has explained,

> Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. "The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence."

**Antidormi**, 84 A.3d at 750 (quoting **Commonwealth v. Page**, 965 A.2d 1212, 1220 (Pa. Super. 2009)); **see also** Pa.R.E. 403. "We define cumulative evidence as 'additional evidence of the same character as existing evidence and that supports a fact established by the existing

evidence.'" ***Commonwealth v. Flamer***, 53 A.3d 82, 88 n.6 (Pa. 2012) (quoting ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 989 (Pa. Super. 2007)).

We conclude that the trial court did not err in permitting Detective Harkins to reread portions of Banks' police statement during his testimony because his rereading of portions of Banks' police statement was not the presentation of cumulative evidence. Throughout her testimony, Banks alleged that the police either inaccurately or falsely transcribed her statement. ***See*** N.T., 9/30/14, at 162-82. Thus, Detective Harkins' testimony, in which he reread portions of Banks' statement, confirmed that those portions of her statement reflected exactly what she had told him, and stated that he in no way coerced or threatened Banks' or otherwise doctored any portion of her statement, was necessary to rebut Banks' claims that her police statement was inaccurate and did not reflect what she told police. ***See*** N.T., 10/1/14, at 200-08.

Additionally, the certified record reveals that Detective Harkins did not, as Young claims, simply reread Banks' police statement in its entirety. ***See*** N.T., 9/30/14, at 162-82; N.T., 10/1/14, at 200-03. To the contrary, the only portions of Banks' police statement that Detective Harkins reread were those portions of her police statement that she, on direct examination, alleged that the police transcribed inaccurately. ***See id.*** Because Detective Harkins' rereading of Banks' police statement was necessary to combat

- 16 -

Banks' claims that her police statement was inaccurate, the purpose of his testimony was not merely to repeat portions of Banks' police statement to the jury. Rather, the Commonwealth used it to refute the allegations of mistake or impropriety on the part of the police in taking her statement. Therefore, the trial court did not err in permitting Detective Harkins to reread portions of Banks' police statement, as it was not cumulative evidence. **See Flamer**, 53 A.3d at 88 n.6.

For his final issue on appeal, Young argues that the trial court erred by providing the jury with Evans' police statement, instead of instructing the jury to rely on its own recollection, during deliberations. **See** Young's Brief at 36-41. Young asserts that allowing the jury to have Evans' police statement during deliberations, without any alternative evidence favorable to Young, caused the jury to place undue emphasis on the statement because the jury returned with a verdict only an hour after receiving the statement, after having deliberated for several hours prior to asking for the statement. **See id.** at 40.

Rule 646 of the Pennsylvania Rules of Criminal Procedure, which governs "Material Permitted in Possession of the Jury" provides, in pertinent part, as follows:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

*    *    *

(C) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(A), (C).

Regarding Rule 646, this Court has explained:

"Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Merbah*, [] 411 A.2d 244, 247 ([Pa. Super.] 1979) (citing *Commonwealth v. Pitts*, [] 301 A.2d 646 ([Pa.] 1973)); Pa.R.Crim.P. 1114 (renumbered 646, effective April 1, 2001).

The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice per se and the error is harmless.

*Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa. Super. 2005) (quoting *Commonwealth v. Strong*, [] 836 A.2d 884, 888 ([Pa.] 2003)).

***Commonwealth v. Barnett***, 50 A.3d 176, 194 (Pa. Super. 2012). Where the material in question is not specifically prohibited by Rule 646(C), "publication to the jury falls squarely within the discretion of the trial court and, thus, the decision cannot be overturned absent an abuse of discretion." ***Id.*** "Our courts have rarely found that materials given to juries during deliberations constitute reversible error." ***Id.***

We conclude that the trial court did not err in permitting the jury to have access to Evans' police statement during deliberations. First, Evans' police statement is not material specifically prohibited by Rule 646(C). ***See*** Pa.R.Crim.P. 646(C). Second, here, the jury only asked to review the content of Evans' police statement. ***See*** N.T., 10/2/14, at 116-29. The jury did not ask to review the content of any of Williams', Banks', or Logans' police statements.[6] ***See id.*** The jury indicated, by asking specifically for Evans' police statement and no other statement, that it had already determined Evans' police statement was important and was going to afford it substantial weight. Allowing the jury access to Evans' police statement, therefore, did not cause the jury to place any greater emphasis on the statement than it already had. Moreover, by asking specifically for Evans' police statement and no other statement, the jury also indicated that further review of the three other police statements was not necessary for its

---

[6] We note that the jury did ask "[h]ow many pages was [Williams'] statement at the police station?" N.T., 10/2/14, at 116.

deliberations. Even though the jury only had access to Evans' police statement during deliberations, the jury's evident recollection of the other three police statements counters any likelihood that the jury placed more emphasis on Evans' statement and improperly skewed the importance of that evidence.

Finally, we find unavailing Young's argument that allowing the jury access to Evans' police statement without any alternative evidence favorable to him resulted in the jury placing undue evidence on Evans' statement. Young does not cite, nor could we find, any authority in support of this assertion.[7] Furthermore, here, the jury did not request access to any evidence during deliberations that would have been favorable to Young. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the jury access to Evans' police statement.

Judgment of sentence affirmed.

---

[7] We note that this Court has held that the risk of the jury placing undue emphasis on an exhibit to which it has access during deliberations decreases when the jury has other exhibits in its possession during deliberations. *Barnett*, 50 A.3d at 195. *Barnett*, however, does not set forth a requirement that the jury must have the additional exhibits in order to prevent the jury from placing undue influence on the contested exhibit. *See id.*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015