357 A.2d 147

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Theodore X. BROWN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 21, 1975.

Decided May 12, 1976.

Nicholas A. Clemente, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, Theodore X. Brown, was found guilty by a jury in Philadelphia of murder of the first degree and guilty of conspiracy to murder. Motions for a new trial and in arrest of judgment were filed and denied. Brown was sentenced to life imprisonment on the murder conviction and given a suspended sentence on the conspiracy conviction. This appeal, contesting only the murder conviction, followed.

On August 17, 1973, Samuel Molten was fatally assaulted in his cell on Cellblock E inside Holmesburg Prison in Philadelphia. Molten had been stabbed fifty-four times and the stab wounds were the direct cause of his death. It was the Commonwealth's theory at trial that Brown, as the Lieutenant, or leader of the Black Muslim sect on Cellblock E, combined with one Kenneth Covil, the Drill Instructor of the sect, one Michael Grant, the Investigator of the sect, and one Edward Ryder, a member of the organization to plan to murder and, in fact,

did murder Samuel Molten over religious differences between the Muslims and Molten. The Commonwealth offered proof of the following facts to support that theory. On August 15th, Ryder and Molten had a heated argument on a catwalk in the receiving area of the prison. During this argument Molten said that Muslims were nothing and Ryder threatened to throw Molten from the catwalk for Molten's disrespectful attitude. It was necessary for prison guards to intervene to prevent the two from coming to blows. The following evening, a meeting was called by Brown and attended by Covil, Grant and Ryder at which it was said that if anyone disagreed with their religious tenets, they "would be taken care of." Subsequently, that evening, Grant and Covil were seen sharpening a metal rod on the floor of their cell. On August 17th, Covil told an inmate to call his cellmate, who was standing near Molten's cell, because he had some business there and did not want any witnesses. Ryder was then seen emptyhanded entering Grant's cell, where the metal rod had been sharpened, and emerging with a blue prison shirt draped over his arm. Ryder then joined Covil and was seen walking in the direction of Molten's cell. Covil was then seen pacing back and forth outside Molten's cell at a time when sounds "like . . . somebody trying to catch their breath" were heard from the direction of Molten's cell. Immediately thereafter, Brown, Grant and Ryder were seen emerging from Molten's cell. The three dispersed but as Covil passed the witness he paused and said: "You didn't see anything." A few minutes later, Molten's body was discovered by prison guards who immediately sounded an alarm. As guards entered the cellblock to answer the alarm, Brown and Ryder were seen running from the direction of Molten's cell towards their own cells. A search of Molten's cell produced a blue prison shirt and a sharpened metal rod, which the medical examiner testified would produce wounds consistent with the fatal stab wounds.

■■ Appellant first contends that the evidence is insufficient to support the conviction. However, after reviewing the evidence in the light most favorable to the Commonwealth and accepting as true all the evidence together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, see *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973), we are convinced that the evidence in this case is of sufficient quality and quantity to support the convictions.[1]

■ Next, the appellant contends that the trial court erred when it allowed the sharpened metal rod and the wooden handle found with it, both of which were admitted into evidence as Commonwealth exhibits and briefly displayed to the jury during the Commonwealth's case in chief, to be taken into the jury room during the jury's deliberations. Appellant makes much of a ruling made by the trial court at the close of the Commonwealth's case, before the defense began production of evidence, where, in response to a motion by the Commonwealth that all exhibits and photographs submitted by the Commonwealth be admitted into evidence and a request for clarification of that motion by defense counsel to determine whether those items admitted into evidence would be permitted to go out with the jury, the trial court ruled that all the proffered items were admissible into evidence, however, certain of the items, including the rod and handle would not go out with the jury. From the colloquy surrounding the motion, it is apparent that, at the time of the motion, it was the trial judge's opinion that since the rod and handle had been shown to the jury and since the prosecution did not emphasize the items as substantive proof, their probative value in the jury room

1. For aspects of conspiracy, see *Commonwealth v. Eiland*, supra, and *Commonwealth v. Neff*, 407 Pa. 1, 179 A.2d 630 (1962). See also, *Commonwealth v. Horvath*, 187 Pa.Super. 206, 144 A.2d 489 (1958).

may be outweighed by their possible prejudicial impact. Without more, the appellant's contention that the judge's subsequent reversal of his stance on this question may have some merit; however, during his summation to the jury, defense counsel displayed the metal rod to the jury and stated:

"Well, it doesn't take a trained eye to see that the point of this weapon is done by machine. You remember it was passed around. This was cut on a machine not grounded down on cement. It is very fine. It is well tooled."

In essence, defense counsel raised the condition of the rod as a means to refute the testimony of the Commonwealth's witnesses.

At the close of summations and before the court delivered its charge to the jury, a conference was held in chambers. During this conference the Commonwealth requested that the rod and handle be allowed to go to the jury in light of the defense's summation and the short period of time for the jury to examine the rod before defense's summation. The trial court then granted the request and the rod and handle were permitted in the jury room during the entire course of deliberations.

Pa.R.Crim.P. 1114 commits the determination of which items, other than transcripts, written confessions, informations and indictments, are properly taken out with the jury during deliberations to the sound discretion of the trial judge.[2] Given the circumstances in this case; that is, the defense made much of the physical condition of the rod to refute the Commonwealth's witnesses, we can find no abuse of discretion in the trial court's permitting

2. But see, *Commonwealth v. Pitts,* 450 Pa. 359, 363 n. 1, 301 A.2d 646, 650, n. 1 (1973) where this Court noted that, "It would be better procedure not to allow exhibits into the jury room which would require expert interpretation." *Pitts* dealt with, *inter alia,* a fingerprint chart which, manifestly, requires expert interpretation. The *Pitts* rationale, even if conclusive on items requiring expert interpretation, does not apply in this case.

the rod and handle to be taken out with the jury during its deliberations.

■ Next, appellant contends that reversible error was committed when, during cross-examination concerning the length of the metal rod, which the witness testified that he saw Brown's alleged co-conspirator sharpen the night before the murder, the trial judge referred to the use of the metal rod introduced by the Commonwealth and previously identified by this witness as the one he saw Brown's co-conspirator holding as the "best evidence" for the purpose of a demonstration of the sharpening process observed by this witness. The witness previously testified that six inches of the object were visible when the object was being held in the sharpener's hand. However, defense counsel sought to give the witness an object only six inches long for a demonstration of the process which the witness observed. The judge correctly ruled on the objection to the use of an object only six inches long by requiring the object to be used in the demonstration to comport with the testimony of the witness and his use of the term "best evidence" in arriving at that ruling cannot be viewed as error requiring the grant of a new trial. Accordingly, this contention is without merit.

■■ Finally, appellant contends that the trial judge breached his duty to remain impartial by virtue of (a) consistently aiding the prosecution in conducting its examination of witnesses and (b) unfairly reviewing the evidence in favor of the Commonwealth during his charge to the jury. Neither has a factual basis. First, appellant refers to several occasions where, in response to defense objections to the phrasing of questions by the prosecution, the trial judge sustained the objections and instructed the assistant district attorney to rephrase his question. Without more, these incidents cannot be considered to constitute aiding the prosecution. Further, during his charge to the jury, the trial judge stated that

he would not review the testimony presented but rather would commit the matter entirely to the individual recollections of the jury. He did, however, mention some facts as they applied to the concepts of law involved in the case.[3] Again, however, there is no basis for appellant's contention and we find no reversible error. We note too that no exception was entered to the charge to the jury and no additional instructions were requested.

Judgment of sentence is affirmed.

3. For example, in reviewing the law of premeditation in first degree murder, the judge told the jury that it was for them to decide if fifty-four stab wounds constituted sufficient malice and premeditation.