· 398 A.2d 1364

COMMONWEALTH of Pennsylvania

v.

Edward Earl HOBSON, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 28, 1978.

Decided March 14, 1979.

William J. Hain, Erie, for appellant.

Shad Connelly, Asst. Dist. Atty., Erie, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Edward Earl Hobson, was tried by a judge sitting with a jury in connection with the homicide of Steve Allen Burton. Appellant was found guilty of murder of the third degree. Post-verdict motions were denied and appellant was sentenced to eight to sixteen years' imprisonment. This direct appeal followed.

On November 2, 1978, this court, by per curiam order, remanded the record in this case. The purpose of the remand was:

"The case is remanded to the Court of Common Pleas of Erie County for a prompt determination of whether a motion for a change of venue was filed and disposed of by that court. See Pa.R.A.P.1926. If such a motion was filed, then the record should be supplemented to include: (1) a true and correct verified copy of the motion for change of venue, (2) the transcript of any testimony and/or legal arguments presented in consideration of the motion, and (3) the transcript of any notes of the voir dire examination. If no motion for change of venue was filed, the court of common pleas should determine whether that issue has been waived. This remand shall not be construed to permit a relitigation of the motion for change of venue."

On December 4, 1978, the court below returned the supplemented record and determined that the issue of the change of venue was "waived." .

Appellant now argues that the court below erred in failing to grant his motion for a change of venue or to hold a hearing on the motion. We do not agree.

The record reveals the following facts. Appellant was charged with the August 4, 1976, slaying of Steve Allen Burton. On August 9, 1976, Stephen Tetuan, Esquire, was appointed by the court below as defense counsel. On August 23, 1976, Tetuan petitioned the court below for the appointment of co-counsel William J. Hain, Esquire.[1] The petition was granted on the above date. Pursuant to our remand order, the supplemented record contains an unsigned, undocketed "motion for change of venue." The "motion" avers that appellant's trial was to commence before Judge Fred P. Anthony on October 18, 1976. The only attorney's name appearing on this "motion" is Stephen Tetuan.[2] Pursuant to our November 2, 1978, remand order, the court below made the following determinations:

(1) Appellant's defense counsel, Stephen Tetuan, Esquire, prepared a motion for change of venue. A signed "motion" was never filed in the Erie County Clerk of Courts office. A copy of the "motion" was left on the desk of the secretary to Judge Fred Anthony. Judge Anthony was the judge originally assigned to preside at appellant's trial.

(2) Judge Anthony took no action on the "motion." Subsequently, appellant's trial was reassigned to Judge Dwyer.

(3) The change of venue motion was not renewed nor mentioned to Judge Dwyer upon his assignment to the case.

1. Attorney Hain appears to have been involved in appellant's case from August 23, 1976, through pretrial, trial and post-verdict motions and continues. his involvement as counsel on this appeal. Attorney Tetuan participated in the pretrial, trial and post-verdict motions proceedings; however, he is not counsel on this appeal.

2. There appears on the motion an unidentified handwritten notation: "given to J. Anthony on 10/6/76."

■ The court below further determined that defense counsel Tetuan did not pursue the change of venue motion because he was satisfied that the *voir dire* of the prospective jurors had resolved any problems with the publicity concerning appellant. On the record, as augmented by the determinations of the court below, the issues surrounding the motion for change of venue are precluded from appellate review. The court below found that defense counsel voluntarily withdrew the motion because the *voir dire* satisfied his judgment concerning the impartiality of the jury. We agree with that determination.

Appellant next argues that the court below erred in permitting the jury to take to the jury room the weapon used by appellant in the slaying. We do not agree.

At trial, Virgil E. Jellison, a firearms expert from the Pennsylvania State Police, testified that a .32 caliber Smith & Wesson six-shot revolver given to him for testing by the Erie Police was the gun that fired the bullet which caused Burton's death. Previous testimony established that the revolver belonged to appellant. Jellison also testified that the ejector rod was missing from the gun. The missing ejector rod would necessitate increased pressure to pull the trigger.

Appellant testified that the shooting of Burton was accidental. He stated that during a fight with Burton, he, appellant, pulled his gun from the waistband of his trousers and struck Burton on the side of the face with the barrel of the gun. Undaunted by the blow, Burton grabbed appellant's hand and the gun. During the ensuing struggle the gun went off, fatally wounding Burton. Appellant further testified that he disassembled the gun. He specifically testified that he unscrewed the ejector rod and discarded it out of his apartment window. He completed his testimony by stating that he did not intend to shoot Burton and that the shooting was accidental.

■ Appellant now argues that because of his defense of accidental shooting, coupled with his testimony concerning

the dismantling of the weapon, especially the ejector rod, the court below erred in sending the weapon, which was admitted into evidence, into the jury room. We do not agree.

Pa.R.Crim.P. 1114 provides:

"Material Permitted in Possession of the Jury

"Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. *Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.*" (Emphasis added.)

In *Commonwealth v. Pitts,* 450 Pa. 359, 366–67, 301 A.2d 646, 650 (1973), this court stated:

"Appellant also contends that the court erred in permitting the jury to take a fingerprint charge into the jury room. Matters such as these are left to the trial judge's discretion, and we fail to see any abuse of this discretion in the instant case. Pennsylvania Rules of Criminal Procedure 1114.[1]

"[1] Although we fail to see any abuse of discretion it would be a better procedure not to allow exhibits into the jury room which require expert interpretation."

We opined in n. 1 of *Pitts* that the better procedure may militate against allowing exhibits to go out to the jury that would require continuous expert opinion in order to properly evaluate the evidence. We believe the *Pitts* admonition does not require a reversal of the ruling of the court below. Initially, we note that Jellison clearly described the difference in the firing of the weapon with and without the ejector rod. Jellison clearly indicated that more pressure would be required to fire the gun without the rod than with it. The Jellison testimony and the weapon are not of such character as to require continued expert interpretation for the jury to properly evaluate the evidence. The jury was fully apprised of the different pressure required to fire the gun and were also told of appellant's defense of accidental shooting.

We find no abuse of discretion on the part of the court below. See also *Commonwealth v. Brown,* 467 Pa. 388, 393, n. 2, 357 A.2d 147 (1976).

■ Appellant next argues that the court below erred in failing to redefine the terms "reckless and grossly negligent manner," when the jury asked the court below to redefine involuntary manslaughter. We do not agree.

After seven hours of deliberation, the jury returned with three specific questions for the judge. One of the questions was the definition of involuntary manslaughter. The judge read the statutory definition to the jury. After answering the remaining questions, the judge asked the jury if they had any further questions. They responded in the negative. The jury then retired to continue their deliberations. After the jury retired, defense counsel requested that the court specifically define "reckless or grossly negligent." The trial court refused the instruction. We find no error in this refusal.

In *Commonwealth v. Boone,* 467 Pa. 168, 180–81, 354 A.2d 898, 904 (1976), this court stated:

". . . It is clear that the judge confined this charge to the precise questions posed by the jury. After the instruction the court inquired of the jury whether the information supplied satisfied their request and they responded in the affirmative. As we noted in *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975), the trial court is not obligated to give further instructions beyond those requested by the jury.[8]

"[8] It should be mentioned that the panel had already returned to the jury room when defense counsel made the request for this instruction."

*Boone* governs this case, and we find no error.

Appellant next argues that the court below erred in failing to adequately define murder of the third degree in its supplemental charge, and in failing to differentiate an example of third degree, given in its supplemental instruction, from the defense of accident proffered by appellant. We do not agree.

The jury returned and requested supplemental instructions. They wanted a redefinition of all the degrees of homicide with examples and a definition of acquittal. The court complied with the exact request of the jury. At the conclusion of the supplemental charge, the court inquired of the jury whether he had answered their questions, to which the foreman responded, "yes." Defense counsel then interposed two objections and requested the court to amplify its definition of third-degree murder concerning malice. The court refused and we find no error.

As stated above, a court need only respond to the precise question posed by the jury and, absent an erroneous response, need not elaborate beyond the jury's question. *Commonwealth v. Boone, supra.* The court in this instance responded to the jury's inquiry to their satisfaction, and appellant does not argue that the court's definition of murder of the third degree was erroneous. We find no error. Moreover, the trial court, in its initial charge to the jury, clearly defined murder of the third degree and its elements, including an extended definition of malice.

Appellant's second argument concerning this supplemental instruction deals with the trial court's example of third-degree murder. The trial court stated:

". . . I might get into a fight with a person and during the course of the fight I may just not know how to stop and I keep going and keep going; I am not trying to kill him but I actually end up killing him. I had no thoughts of killing him. That would be murder in the third degree. Involuntary manslaughter is an unintentional slaying, without malice, directly resulting from the doing of an act, whether the act is lawful or unlawful, in a reckless or grossly negligent manner. . . ."

Appellant does not argue that this example was incorrect in portraying murder of the third degree, but, rather, argues that it closely approximates the facts of this case so as to be prejudicial. We do not agree that appellant was prejudiced.

In *Commonwealth v. Rodgers,* 459 Pa. 129, 132, 327 A.2d 118, 120 (1974), this court stated:

> "In a multitude of decisions, this Court has ruled that in evaluating the correctness of instructions to a trial jury, the charge must be read and considered as a whole, and it is the general effect of the charge that controls. For example, see *Commonwealth v. Fell,* 453 Pa. 531, 309 A.2d 417 (1973); *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Heasley,* 444 Pa. 454, 281 A.2d 848 (1971); and *Commonwealth v. Franklin,* 438 Pa. 411, 265 A.2d 361 (1970). . . ."

A reading of the original charge and the various supplemental charges makes clear that the court below copiously covered appellant's theory of accidental shooting. The charge, when read as a whole, convinces us that no prejudice was incurred by appellant.

■ Finally, appellant argues that the court below erred in its charge to the jury concerning the defense of misadventure. We do not agree.

Specifically, appellant argues that the court below failed to inform the jury that if they accepted appellant's version of the homicide, then the drawing of the gun was in self-defense and they must find the required element of the "lawful act" in the defense of misadventure.

In his charge, the trial court quoted *Commonwealth v. Pavillard,* 421 Pa. 571, 574, 220 A.2d 807, 809 (1966), in defining "homicide by misadventure":

> " . . . 'Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. "Three elements enter into the defense of excusable homicide by misadventure: [1] The act resulting in death must be a lawful one; [2] It must be done with reasonable care and due regard for the lives and persons of others; and [3] the killing must be accidental and not intentional, or without unlawful intent,

or without evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state, or unlawfully striking another with an intent to hurt, although not with an intent to kill . . . ." ' "

The court then stated that if the jury accepted appellant's version and the evidence created a reasonable doubt in their minds, they should find appellant not guilty.

Appellant attempts to combine two distinct defenses: misadventure and self-defense. Misadventure, as defined by *Pallivard, supra,* deals with unintentional incidents; self-defense clearly deals with intentional acts that are not criminal in nature. See Crimes Code § 505, 18 Pa.C.S.A. § 505. Moreover, as this court stated in *Commonwealth v. McComb,* 462 Pa. 504, 509, 341 A.2d 496, 498 (1975):

". . . [T]he trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration. Compare *Commonwealth v. Nelson,* 396 Pa. 359, 366, 152 A.2d 913, 917 (1959); *Commonwealth v. Clanton,* 395 Pa. 521, 526, 151 A.2d 88, 91 (1959)." (Footnote omitted.)

A review of the charge reveals adequate, clear and legally correct instructions on the defense of misadventure.

Judgment of sentence affirmed.

POMEROY, former J., took no part in the decision of this case.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent. The trial judge's erroneous example of murder in the third degree constitutes reversible error.

The majority inaccurately states that appellant does not argue that the example given by the trial judge was incorrect. (p. 1368). In its brief appellant contends that:

"The court erred in failing to fully and adequately explain and define third degree murder, and in failing to fully and adequately differentiate an example of a criminal offense as given by the court from the factual defense of accidental killing asserted by the defendant in the case at bar.

After lengthy deliberation by the jury, they returned to the courtroom requesting, by question, further explanation of third degree murder. The court responded as follows:

Third degree murder—all murder which is not murder of either the first or second degree is murder of the third degree. Now, this would be an unlawful slaying accompanied by malice as I defined that to you yesterday, but where there is no specific intention to kill, *I might get into a fight with a person and during the course of the fight I may just not know how to stop and I keep going and keep going. I am not trying to kill him but I actually end up killing him. That would be murder in the third degree.*" (Emphasis in original.) (Transcript, p. 494.)

Therefore, appellant does argue contrary to the majority's view that the trial judge inaccurately described murder in the third degree.

The above-quoted portion of the trial judge's supplemental instruction was confusing because it failed to distinguish to the jury that murder in the third degree included an element of malice while the accidental shooting theory advanced by appellant did not. Hence, my dissent.