J-A23005-13

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM J. LYNN, | : | |
| | : | |
| Appellant | : | No. 2171 EDA 2012 |

Appeal from the Judgment Sentence entered July 24, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0003530-2011

BEFORE:  BENDER, P.J.E., DONOHUE and MUSMANNO, JJ.

CONCURRING AND DISSENTING MEMORANDUM BY DONOHUE, J.:

**FILED: December 22, 2015**

I agree with the learned Majority that Lynn's remaining sufficiency claims are unreviewable.  The Supreme Court found that Lynn "endangered the welfare of D.G., whose well-being he supervised, when he placed Rev. Avery in a position to have access him," and that "the Commonwealth's evidence was sufficient to sustain the conviction for EWOC as a principal." ***Commonwealth v. Lynn***, 114 A.3d 796, 826, 827 (Pa. 2015).  On that basis, the Court declined to "address the separate contention that the evidence was insufficient to sustain the EWOC  conviction as an accomplice." ***Id.***  As the Majority accurately concludes, this forecloses our review of any of Lynn's additional challenges to the sufficiency of the evidence to sustain his conviction of EWOC.  ***See*** Maj. at 10-13.

Based upon the standard by which we review evidentiary challenges, however, I respectfully disagree that the trial court's decision to admit the prior bad acts evidence at trial warrants reversal and the grant of a new trial. In reaching its conclusion, the Majority reweighs the other acts evidence presented before the trial court. This is improper, as we review challenges to the admission of evidence for an abuse of discretion. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007) (citation omitted).

Further, despite its recognition that Lynn does not challenge the evidence admitted on a case-by-case basis, *see* Maj. at 16, it nonetheless parses the evidence of the individual prior acts presented and makes findings regarding the probative value of that testimony. *See, e.g., id.* at 23 (finding evidence presented concerning Father Cudemo "more relevant and probative" of Lynn's motive in his dealings with Avery and Brennan than the evidence presented about Father Gausch, and chastising the trial court for failing "to distinguish between significantly probative and minimally probative evidence"). It is axiomatic that this Court cannot reverse the trial court based upon an argument not presented on appeal. *See Commonwealth v. Colavita*, 993 A.2d 874, 898 (Pa. 2010); *The York*

***Grp., Inc. v. Yorktowne Caskets, Inc.***, 924 A.2d 1234, 1246-47 (Pa. Super. 2007).

In my view, the record reveals no abuse of discretion in the trial court's decision to admit the other acts evidence presented at trial. The trial court found, inter alia, that this evidence was probative of Lynn's "motive to uphold and advance the practices and policies of his predecessors, which prioritized shielding the Church from scandal over protecting children from the sources of that scandal," and "intent to protect the reputation of the Church as a moral institution, and priests as moral individuals, even when that meant jeopardizing the welfare of child parishioners." Trial Court Opinion, 4/12/13, at 133. As the Majority correctly states, for other acts evidence to be admissible as proof of motive, "there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Ross***, 57 A.3d 85, 100 (Pa. Super. 2012) (en banc) (citation and quotations omitted).

The record reflects that as the Secretary for Clergy, Lynn was responsible for addressing the reports of sexual abuse committed by priests. N.T., 4/3/12, at 259. By his own admission, Lynn had no formal training on how to handle these reports prior to taking this job, but learned from his predecessors and on the job about how to handle interviewing the victim(s),

investigating the allegations made, and confronting the accused priest. N.T., 5/7/12, at 222-29. By Lynn's own account, he thought his predecessors did the job well and were "doing the right thing." *Id.* at 226. In other words, this is how he learned to do his job, and these are the people he modeled himself after in his job performance. Lynn was fully aware of the prior acts of abuse committed by priests under the auspices of the Philadelphia Archdiocese. He not only read and reviewed the files contained in the Secret Archives detailing the horrors committed by these priests, but also received inquiries and reports from victims of other priests regarding incidents of abuse that predated his tenure as Secretary for Clergy and was responsible for addressing these concerns.

The record supports a finding that both Lynn and his predecessors handled prior allegations of sexual abuse against other priests with the motive and intent of shielding the Church from scandal. Thus, there is support for the conclusion that the way Lynn handled the allegations of abuse made against Avery and Brennan "grew out of" and was "caused by" the way Lynn's predecessors and Lynn himself handled past allegations of sexual abuse committed by other priests. *See Ross*, 57 A.3d at 100. This is especially so in light of Lynn's testimony that the protection of children, not the protection of the Church, was of foremost importance in his role as the Secretary for Clergy. *See* N.T., 5/23/12, at 190-91.

Further, the Commonwealth was tasked with proving that Lynn "knowingly" endangered the welfare of children. *See* 18 Pa.C.S.A. § 4304(a)(1). As the trial court observed, Lynn denied "that he knowingly or intentionally placed children in harm's way," claiming instead that "in light of his limited power, lack of training and the instructions he was given by the Archdiocese of Philadelphia, as well as the information provided to him about Fathers Avery and James Brennan, he did the best he could have done in handling these cases at that time." Trial Court Opinion, 4/12/13, at 134-35 n.85 (quoting Lynn's Answer to Commonwealth's Motion in Limine to Admit Other Acts Evidence Pursuant to Pa.R.E. 404(b)(2), 12/12/2011, at 18). Therefore, as the trial court found, the evidence of how past allegations of sexual abuse were handled by Lynn and his predecessors was also probative to show that when dealing with Avery and Brennan, Lynn had knowledge of the risk of placing an abusive priest around children. *See id.* at 133, 138-45.

I also would find no abuse of discretion in the trial court's conclusion that the probative value of the evidence outweighed its potential to prejudice Lynn. Although the Majority points to one instance of the trial court "summarily" addressing the probative/prejudicial question, my review of the trial court's opinion reveals that it dedicates far more than "precisely one sentence" to the question of the prejudicial nature of the evidence. *See* Maj. at 32 (citing Trial Court Opinion, 4/12/13, at 180); *see also* Trial Court

Opinion, 4/12/13, at 133-38 (discussing the law regarding the probative/prejudicial balancing test and applying it to the other acts evidence presented in the case at bar), 145 ("the probative value of this evidence, which provided a complete picture of [Lynn]'s knowledge that sexually abusive priests are opportunistic offenders who can cause grave harm to children in myriad ways, outweighed its potential for prejudice"), 168 ("Evidence that [Lynn] learned how his predecessors pursued the Cardinal's priority, and that he mimicked their efforts, was critical to the jury's understanding of [Lynn]'s mens rea, and thus it outweighed any potential for prejudice.").

As stated by the trial court, "The admission of [Pa.R.E. 404(b)] evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." Trial Court Opinion, 4/12/13, at 134 (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 497 n.25 (Pa. 2009)).[1] "Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." *Commonwealth v. O'Brien*, 836

---

[1] I note that the statement appearing on page 137 of the trial court's opinion that "the [other acts] evidence [in the case at bar] did not 'stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence,'" referred not to *Commonwealth v. Williams*, 9 A.3d 613 (Pa. 2010), as the Majority states, but to this passage from *Sherwood* that appeared earlier in the trial court's opinion. *See* Trial Court Opinion, 4/12/13, at 132, 137; Maj. at 37.

- 6 -

A.2d 966, 972 (Pa. Super. 2003). Where the other acts evidence is required for the Commonwealth to prove its case and to refute the defendant's denial of criminal conduct, it is not unduly prejudicial. ***Commonwealth v. Gordon***, 673 A.2d 866, 870 (Pa. 1996); ***see also Commonwealth v. Towles***, 106 A.3d 591, 603 (Pa. 2014) (finding evidence of the defendant's prior bad acts to be admissible, inter alia, to refute his claim that he lacked specific intent to murder the victim), *cert. denied sub nom.* ***Towles v. Pennsylvania***, 135 S. Ct. 1494 (U.S. 2015).

The trial court found that the other acts evidence was necessary for the Commonwealth to prove its case, as it was the only evidence to establish Lynn's mens rea required for convictions of EWOC and conspiracy and to combat his claims that his priority was to protect the children of the Archdiocese of Philadelphia. ***See*** Trial Court Opinion, 4/12/13, at 13, 134-35 n.85; ***see also Gordon***, 673 A.2d at 870; ***Towles***, 106 A.3d at 603. Furthermore, the trial court instructed the jury nine separate times regarding the purpose for which the others acts evidence was admissible and could be considered, which, as this Court has previously held, "minimiz[es] its prejudicial effect." ***Commonwealth v. Kinard***, 95 A.3d 279, 287 (Pa. Super. 2014); ***see*** Trial Court Opinion, 4/12/13, at 136 n.86, 136-37.

The Majority goes on to "assess the effect" of the multiple cautionary instructions issued by the trial court in association with the other acts evidence presented. The learned Majority recognizes "the presumption that

a jury follows the curative instructions of the trial court," further correctly states that "this presumption is not unassailable," and ultimately concludes that the cautionary instructions failed to ameliorate the unfair prejudice that resulted from the admission of the other acts evidence. Maj. at 40-42. My review of Lynn's appellate brief reveals, however, that once again, he failed to raise any argument regarding the sufficiency of the trial court's cautionary instructions. Indeed, he did not include any recognition of these instructions in his argument on this issue before this Court. As Lynn did not present any argument to rebut the presumption in favor of limiting instructions curing any prejudice that may arise from the admission of other acts evidence, it is improper for the Majority to reverse the trial court on that basis. **See Colavita**, 993 A.2d at 898; **The York Grp.**, 924 A.2d at 1246-47.

Therefore, I would find no abuse of discretion in the trial court's admission of the other acts evidence at trial. Because I disagree with the Majority that Lynn is entitled to a new trial on this basis, for purposes of completeness, I briefly discuss the remaining issues he raised on appeal.

**<u>Jury Instructions</u>**

Lynn raises several challenges to the propriety of the instructions the trial court provided to the jury. This Court reviews such challenges according to the following standard:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to

determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

**Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (citations omitted), *appeal denied,* 95 A.3d 275 (Pa. 2014).

First, Lynn criticizes the trial court's failure to instruct the jury that Lynn could only be found to be a "supervisor" under the 1995 version of the EWOC statute if the Commonwealth proved his "actual involvement with a known child." Lynn's Brief at 41-46. Our Supreme Court's decision in this matter rebuts Lynn's claim of error here, as it concluded that "the requirement of supervision is not limited to only certain forms of supervision, such as direct or actual, [but] encompasses all forms of supervision of a child's welfare." **Lynn**, 114 A.3d at 824. Therefore, the trial court did not abuse its discretion by failing to instruct the jury as Lynn requested.

Next, Lynn contends that when defining "knowing" conduct required to convict him of EWOC, the trial court abused its discretion by instructing the jury that it did not need to find that Lynn "was practically certain that the child would be sexually abused as a result of his act or omissions or that harm actually occurred." Lynn's Brief at 46-49 (quoting N.T., 6/1/12, at 76-77). According to Lynn, this instruction "contradicts the statutory language

that 'a person's conduct is knowing when he is aware that it is practically certain that this conduct will result in a particular result.'" ***Id.*** at 47 (case citations omitted). In Lynn's estimation, the "particular result" that the Commonwealth was required to prove was that Lynn was aware "that Avery would abuse a child there." ***Id.***

To establish the intent element of EWOC, the Commonwealth must prove the following:

> (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Wallace***, 817 A.2d 485, 490-91 (Pa. Super. 2002) (citation omitted).

> [T]he [EWOC] statute does **not** require the actual infliction of physical injury. Nor does it state a requirement that the child or children be in imminent threat of physical harm. Rather it is the awareness by the accused that his violation of his duty of care, protection and support is "practically certain" to result in the endangerment to his children's welfare, which is proscribed by the statute.

***Id.*** at 491-92 (emphasis in the original).

The record reflects that following the provision of the objected-to instruction, the trial court stated:

> To find that the defendant knowingly endangered the welfare of a child, it must be proved beyond a

> reasonable doubt that the defendant was aware of his duty to protect the child, that he was aware that the child was in circumstances that threatened the child's physical or psychological welfare, and that he either failed to act or took actions so lame or meager that such actions could not have been reasonably expected to protect the child's welfare.

N.T., 6/1/12, at 77. This is an accurate statement of the law. *See Wallace*, 817 A.2d at 490-92. Thus, reading the instruction in its entirety, I would conclude that Lynn is not entitled to relief on this claim.

The third instruction Lynn maintains was erroneous relates to the jury charge regarding his "duty of care." Lynn asserts that the trial court used a definition "derived from tort and corporate law," which, according to Lynn, "has no application in a criminal trial for endangering the welfare of children." Lynn's Brief at 49-50. He cites no case law in support of this proposition, thus waiving this claim on appeal. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 781 (Pa. Super. 2015) (en banc) ("When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none"), *appeal denied,* 123 A.3d 331 (Pa. 2015). Further, Lynn's argument focuses on the fact that the pre-amended version of the EWOC statute did not impute upon him a duty of care, a proposition effectively put to rest by our Supreme Court's decision in this matter. *See Lynn*, 114 A.3d at 826 (finding that "the Commonwealth's evidence was sufficient to sustain the conviction for EWOC as a principal"); *but see id.* at 823 (our Supreme Court stating in the same Opinion that the question of

whether Lynn "owed a duty of care to the children of St. Jerome's, or to D.G. in particular, is not an issue in this appeal and was not encompassed within our grant of allowance of appeal").

Lynn next assails the trial court's "improper emphasis on the concept of accomplice liability" when instructing the jury, arguing that in so doing, it was "hinting at an outcome it favor[ed]." Lynn's Brief at 51-52. The record bears no support for this claim. The trial court provided the jury with the definition of accomplice liability only once, while generally explaining how a defendant can be responsible for crimes committed by another person and how accomplice liability differs from conspiratorial liability. N.T., 6/1/12, at 72-74. The trial court only again mentioned the concept of accomplice liability when defining the elements of EWOC, explaining that Lynn could be guilty as either a principal or an accomplice. *Id.* at 76-81.

In his fifth jury instruction-related argument, Lynn asserts that "[t]he trial court impermissibly instructed the jury that it can find [Lynn] guilty of EWOC if it found that Avery had endangered unknown and unnamed persons." Lynn's Brief at 53 (citing N.T., 6/1/12, at 75; N.T., 6/5/12, at 60-62, 67-68). The record reflects, however, that this instruction was based upon a prior ruling of the trial court pertaining to the expiration of the statute of limitations for the charges brought by one of the named victims, M.B., and that the trial court's instruction was consistent with that ruling. *See* N.T., 6/5/12, at 45-46, 66-67. Lynn does not provide any citation

indicating where in the vast and extensive record of this case he made the original objection to the inclusion of unnamed minors in the EWOC charge or jury instruction. The portion of the record cited to in his brief on appeal reveals that Lynn acquiesced to the trial court instructing the jury that unnamed minors could be considered as victims for an EWOC conviction based upon the trial court's prior rulings. *See* Lynn's Brief at 53 & n.35; N.T., 6/5/12, at 45-47, 60-61, 63. Therefore, in my view, the issue raised is unreviewable. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim.").

Lastly, Lynn asserts that the trial court erred in answering the jury's questions of (1) whether the defendant's conduct must be criminal for a defendant to be guilty of EWOC and (2) whether the defendant must know that the endangering behavior was a crime. Lynn's Brief at 53-54 (citing N.T., 6/11/12, at 4). The record reflects that the trial court answered: (1) "it does not have to be, but it could be," and (2) "no, one does not have to know his conduct is a crime." N.T., 6/11/12, at 27. According to Lynn, these answers "were misleading and inappropriate," as the trial court "shortchanged the law of EWOC" by providing such "brief answers." Lynn's Brief at 54. Lynn contends that the trial court should have expounded on the context of the behavior, instructing the jury that non-criminal actions can only constitute EWOC once these actions "rise to the level of criminal

conduct," providing the example of a person who fails to feed a child for five hours as opposed to five days, and asserting that only the latter would constitute criminal behavior sufficient for a conviction of EWOC. **_Id._**

"[A] court need only respond to the precise question posed by the jury and, absent an erroneous response, need not elaborate beyond the jury's question. **_Commonwealth v. Hobson_**, 398 A.2d 1364, 1367 (Pa. 1979). The jury did not ask how long or to what degree a person must act for an otherwise non-criminal action to be considered criminal for an EWOC conviction. The jury simply asked "does the endangering behavior regarding the welfare of children have to be considered criminal behavior?" and "would the defendant have to know the behavior was a crime?", and the trial court answered the questions posed. Thus, the trial court did not err or abuse its discretion by failing to provide the answer requested.

**Prosecutorial Misconduct**

As his final issue on appeal, Lynn raises several claims of prosecutorial misconduct based upon statements made by the Commonwealth during its summation and asserts that the trial court erred by denying his motion for a mistrial. This Court reviews such issues with the following in mind:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the

basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (en banc) (quoting *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009)) (internal citations omitted). The law is clear that closing arguments by the prosecution must be evaluated in the context in which they were made and in light of statements made during defense counsel's summation to which the prosecutor may respond. *Commonwealth v. Ligons*, 773 A.2d 1231, 1238 (Pa. 2001); *Judy*, 978 A.2d at 1020. Further, "prosecuting attorneys have leeway to present their arguments with logical force and vigor, and they are permitted a degree of oratorical flair in advocating the Commonwealth's case." *Commonwealth v. Laird*, 119 A.3d 972, 1010-11 (Pa. 2015) (internal citations, quotations and brackets omitted).

Lynn first states that the prosecutor's reference to the personnel at St. John Vianney who evaluated and treated Avery as "company doctors,"

insinuating that they diagnosed priests accused of sexual abuse to appease the Archdiocese of Philadelphia was improper, as there was no evidence to support that claim. Lynn's Brief at 68. My review of the record reveals that Lynn himself agreed that the Archdiocese of Philadelphia owned St. John Vianney and that he was a member of its board of directors for a number of years at the Cardinal's direction. *See* N.T., 5/23/12, at 204-05. The Commonwealth also presented evidence that some of the priests who committed acts of abuse against children and were evaluated by St. John Vianney were not given a diagnosis of a specific sexual disorder, even in cases where the priest admitted to having committed the act(s). *See, e.g.,* N.T., 4/2/12, at 23-25; N.T., 4/16/12, at 154-59; N.T., 5/10/12, at 124, 153-54. Avery was one such priest. *See* N.T., 3/27/12, at 42, 48. Thus, in my view, these statements by the Commonwealth were reasonable based on the evidence presented and inferences derived therefrom. *See Caldwell*, 117 A.3d at 774.

Next, Lynn contends that because the prosecutor used the word "pedophile" in connection with priests, including Avery, who had never been given that diagnosis, the trial court abused its discretion by denying his request for a mistrial. Lynn's Brief at 69. The trial court found that the prosecutor referred to priests as "pedophiles" who had not been diagnosed in connection with the Commonwealth's theory that the absence of diagnosis was part of the Archdiocese's effort to "avoid scandal," even though the

priests' actions warranted the diagnosis. Trial Court Opinion, 4/12/13, at 221-22. The record supports that conclusion. *See, e.g.,* N.T., 5/31/12, at 138-39, 158-59, 173, 175, 176, 187, 190, 219. Based upon the context the prosecutor used the word "pedophile" in his summation, the trial court did not abuse its discretion by refusing to grant the requested mistrial. *See Ligons*, 773 A.2d at 1238; *Caldwell*, 117 A.3d at 774.

Lynn also assails the prosecutor's reference in his closing argument "to the existence of countless other currently unknown victims of Avery," asserting that there was no evidence presented to support such a claim. Lynn's Brief at 69. My review of the record reveals that Lynn failed to object on this basis in the court below. As such, the argument is waived on appeal. *See Commonwealth v. Sanchez*, 82 A.3d 943, 969-70 (Pa. 2013) ("This Court has long held that to preserve for appellate review an objection relating to the opening or closing address of opposing counsel, the objection must be specific and brought to the trial judge's attention as soon as is practical."), *cert. denied sub nom. Sanchez v. Pennsylvania*, 135 S. Ct. 154 (U.S. 2014); Pa.R.A.P. 302(a).

Lynn further argues that the prosecutor inappropriately ended his summation by stating: "I'd ask that you bring back the verdict which is demanded by justice, which is demanded by the victims, which is demanded by the children, **which is demanded by the little ones**." Lynn's Brief at 69; N.T., 5/31/12, at 227 (emphasis added). According to Lynn, the

emphasized portion of that statement was "the Commonwealth's attempt to convict [Lynn] for the sins of the church." Lynn's Brief at 69. I disagree with this characterization, as Lynn stood trial for acts of sexual abuse perpetrated by two priests to more than one child. Thus, the "little ones" referred to could have been the victims at issue in this case.

Furthermore, the record reflects that immediately following this statement by the prosecutor, the trial court instructed the jury in direct response to that statement: "Before I excuse the jury I will just tell you that the only verdict you will return is a verdict that is supported by the evidence." *Id.* Before excusing the jury that day, the trial court further instructed: "I will tell you right now and I will remind you again tomorrow, that to the extent that you heard from any of the attorneys anything of a personal opinion and that is not, in fact, supported by the evidence of record, then you are to disregard it." *Id.* at 255. The following day, at the inception of its full charge to the jury, the trial court stated:

> In determining the facts, you are to consider only the evidence which has been presented in this courtroom from the witness stand, and also the stipulations that have been entered into by and between counsel, and the logical inferences which are derived from all of that evidence, and that requires you, pursuant to your oath, to perform your duties with fairness and impartiality. Do not let outside forces or outside influence play any role in your deliberations or decision-making.
>
> … Your determination of the facts should not be based on sympathy for or prejudice against the

> defendants or the witnesses or the families or the audience or any victims, nor on which attorney made the better speech – or the best speech, I should say – nor on whether or not you like the attorneys in the case.

N.T., 6/1/12, at 39.

As stated above, we presume that a jury follows the trial court's instructions. *See Commonwealth v. Reid*, 99 A.3d 470, 501 (Pa. 2014). Thus, to the extent Lynn suffered any prejudice by the Commonwealth's remark, it was effectively eliminated by the trial court's cautionary instructions. *See, e.g., Commonwealth v. Lopez*, 57 A.3d 74, 84 (Pa. Super. 2012).

As his final claim of error, Lynn asserts that the trial court abused its discretion by denying his request for a mistrial because the prosecutor "referred to defense counsel as 'highly-paid attorneys' and cautioned the jury not to fall for defense counsel's 'deceptive lawyer stuff,'" which he contends "malign[ed] the integrity of defense counsel by implying that defense counsel is deceitful and manipulative." Lynn's Brief at 70. The record reflects that the prosecutor did not make the two statements at the same time. The prosecutor referred to defense counsel as "very skillful, very crafty, very well paid," in his urging to the jury that it must listen to the trial court and its instructions regarding the law, and not defense counsel. N.T., 5/31/12, at 127. This statement was based upon defense counsel giving an erroneous definition of EWOC to the jury. *See id.* at 126-27; *see*

*also id.* at 25-26 (counsel for Lynn defining EWOC in his closing argument as requiring proof that when placing Avery at Nazareth Hospital, Lynn "was practically certain" that placement there would "cause the harm" and "what the result would be"); *Wallace*, 817 A.2d at 490-92. The prosecutor made the second statement later in his summation when, referring to the jury selection process, he stated:

> I think it's invasive when we picked you. The Judge asks you all these questions. But we do it for a reason because we want to pick people who could be fair. Fair to everybody. Because what we know is if we get fair people, people that will follow the law in a case like this, they will convict. People – we want to pick people who have common sense, who won't fall for deceptive, attractive lawyer stuff. We picked you for a reason.

*Id.* at 179-80.

As stated above, a prosecutor's statements only constitute reversible error if "the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Caldwell*, 117 A.3d at 774. Insinuating that defense counsel was being "deceitful" does not meet this threshold if the statement finds support in the record. *See, e.g., Commonwealth v. Guilford*, 861 A.2d 365, 371 (Pa. Super. 2004) (finding that the prosecutor's statement in summation that defense counsel "tried to pull the wool over your eyes," and stating "that he was tempted to say that '[e]verything [that defense

counsel] just said is total BS,'" was not prosecutorial misconduct, as it was based upon defense counsel's failure to put forth evidence promised in the opening statement). As such, I would find no abuse of discretion in the trial court's denial of Lynn's request for a mistrial.

## Conclusion

The Majority grants Lynn a new trial based upon its conclusion that the trial court abused its discretion by admitting evidence regarding the handling of other accusations of sexual abuse against other priests by Lynn and his predecessors. I disagree that our standard of review permits us to reverse the trial court on that basis. I further conclude, based upon my review of the record and the remaining arguments raised, that Lynn is not otherwise entitled to relief. I therefore respectfully dissent.