J-S11043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAWRENCE DARNELL REDMAN | : | |
| | : | |
| Appellant | : | No. 1363 WDA 2016 |

Appeal from the PCRA Order August 12, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003824-2011

BEFORE: OLSON, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 17, 2017**

Lawrence Darnell Redman ("Appellant") appeals from the order entered by the Court of Common Pleas of Westmoreland County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541-9546. Serving a sentence of 20 to 40 years' incarceration for Criminal Attempt – Criminal Homicide, 18 Pa.C.S. § 901(a) and two counts of Aggravated Assault, 18 Pa.C.S. § 2709(a)(1), (4), for shooting his girlfriend four times, Appellant contends that the PCRA court erroneously denied relief on his claim that trial counsel ineffectively failed to request a jury instruction on self-defense. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The PCRA court aptly summarizes the relevant factual history underlying his case:

The charges in this case arose from the shooting of Annamarie Henderson on September 24, 2011. Per the Trial Transcript, Ms. Henderson testified that into the morning hours of September 24, 2011, she and [Appellant] went to Walmart on State Route 30 in Greensburg where she attempted to cash a check. [N.T. 8/6/12 - 8/9/12 at 390-91]. A problem ensued where Ms. Henderson realized that she did not want to be with [Appellant] so she got into the vehicle and left him in the parking lot of Walmart. At approximately 3:53 a.m., Ms. Henderson ultimately drove to her residence and fell asleep [inside the car]. *Id*.

[Appellant] testified that after Ms. Henderson left him, he [eventually managed to arrive at her residence, at approximately 5:30 a.m., for the purpose of retrieving] his wallet and gun that he had left in [her] car. *Id*. at 391-92. When he arrived, he found Ms. Henderson sleeping in her vehicle. *Id*. at 395. After obtaining a spare key, [Appellant] . . . opened the vehicle door in an attempt to retrieve his belongings[, he testified]. *Id*. at 399. [Appellant] testified that Ms. Henderson awoke and was standing outside the door on the driver's side. *Id*. At this time, [Appellant alleged], Ms. Henderson told him that all she needed to do was call the police and he would go to jail. *Id*. Additionally, [Appellant] testified that Ms. Henderson said she would "cut" him, and she reached in the car to grab her purse. *Id*. at 399-401. [Appellant] testified that he did not have his gun at this time. *Id*.

Ms. Henderson had previously testified that she usually kept a yellow and black razor blade knife in her purse, although she was unsure if she had it in her purse that evening. *Id*. at 224. [Appellant] testified that [her stated intention] caused him some concern because Ms. Henderson has pulled knives on him and his mother in the past. *Id*. at 401-02. At that point, [Appellant testified], he grabbed the gun and was heading towards the back of the car, going towards the driveway at Aviation Lane. *Id*. [Appellant] continued testifying on direct examination:

> **Q:** What happened at this point?

**A:** I pulled my weapon out of my holster and I shot over the back of the car like towards the ground. Towards – there's a sidewalk and – I'm so sorry, Theresa. But I shot my weapon over the back of the car and Anna was coming towards me. She wasn't just getting out of the car, she was coming after me. And she walked into the gunfire, I guess, because she turned around and I didn't know she was hit. And when she went to the ground, I thought she was diving to the ground to avoid being shot.

**Q:** Let me ask you this, Darnell. When you shot the gun, were you trying to hit her?

**A:** No, I was not trying to hit her.

**Q:** You shot four times.

**A:** Yes, I did shoot four times.

**Q:** Did you try to kill her with any of those shots?

**A:** No, sir, I didn't.

**Q:** Were you trying to hit her with any of those shots?

**A:** No. I didn't see her at that point because the light doesn't stay on that long, it went off, and she was like – I don't know, she was on the other side of the car.

*Id*. at 401-02.

On cross-examination, [Appellant] testified that he fired four warning shots as he attempted to retreat, the purpose of which was to stop Ms. Henderson from approaching. *Id*. at 437-39. However, [Appellant] struck Ms. Henderson each time he fired. *Id*. at 250-52. Prior to closing, Attorney Haidze indicated that after considerable discussion with three other senior attorneys in the Public Defender's Office, he did not wish to request a self-defense instruction. *Id*. at 487.

During the trial, Ms. Henderson also testified to two separate incidents involving [Appellant]. Specifically, Ms. Henderson testified that [one month before the shooting] she grabbed a knife to defend herself after [Appellant] became jealous and angry and physically assaulted her. Further, she testified that, "I'm – I'm a hundred thirty pounds, he's two-something. I'm – I wasn't going to be able to hurt him anyhow. I definitely did not go at him. If he came at me, I wanted to have something to protect myself. *Id*. at 212. [Appellant] testified that he was six feet tall and weighed 250 pounds. *Id*. at 411. Due to that altercation, [Appellant] inflicted a bloody, broken nose and fractured orbital bone upon Ms. Henderson using his hands. *Id*. at 192, 382. [Appellant] also testified that prior to these incidents he had been employed at liquor establishments as a bouncer. *Id*. at 388, 418-420.

Trial Court Opinion, filed August 12, 2016, at 3-5.

On August 9, 2012, a jury found Appellant guilty of the above-mentioned crimes, and the trial court sentenced him on November 5, 2012. This Court affirmed judgment of sentence on November 19, 2013, and the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on April 21, 2014.

On August 21, 2014, Appellant filed this timely PCRA petition, his first. Counsel was appointed and, after initially filing a No-Merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988), withdrew his motion to withdraw and filed, instead, an amended PCRA petition asserting ineffective assistance of trial counsel for failing to request a jury instruction on self-defense. On June 2, 2016, the PCRA court presided over an evidentiary hearing at which Appellant and trial counsel testified.

- 4 -

[Appellant testified that the motivating factor for his testimony at trial was to explain to the jury that he was acting in self-defense. N.T. 6/24/16 at 18. [Appellant] contended that he was aware that the victim ordinarily kept a knife in her purse[,] and [he] feared she intended to use it. *Id*. Additionally, [Appellant] testified that at no point did trial counsel discuss his inclination not to request a self-defense instruction. *Id*. at 20.

Attorney Haidze also testified at the Evidentiary Hearing. Attorney Haidze testified that he was aware that Ms. Henderson previously brandished a knife and threatened [Appellant]. *Id*. at 5. However, Attorney Haidze testified that he believed that the accidental injury jury instruction was more appropriate given the circumstances of the case, as he did not want to confuse the jury with two distinct instructions. *Id*. at 5-7.

Trial Court Opinion, at 5.

Informed by both the hearing and advocates' briefs, the court entered its order of August 12, 2016, denying Appellant's claim and dismissing his petition. This timely appeal followed.

Appellant presents one question for our review:

**[DID] THE COURT OF COMMON PLEAS ERR[] IN FINDING THE PETITIONER'S TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION ON SELF-DEFENSE, DESPITE THE PETITIONER'S SELF-DEFENSE TESTIMONY AND TRIAL COUNSEL'S CLOSING REFERENCING SELF-DEFENSE[?]**

Appellant's brief at 2.

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297, 301 (Pa.2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. *Id.* at 305

(citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9453(a)(2); (2) his claims have not been previously litigated or waived, *id.,* § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[,]" *id.,* § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" *Id.,* § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." *Id.,* § 9544(b).

*Commonwealth v. Treiber,* 121 A.3d 435, 444 (Pa. 2015).

The governing legal standard of review of ineffective assistance of counsel claims is well-settled:

> [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668 (1984). . . . To prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. *Commonwealth v. Pierce,* 527 A.2d 973, 975 (Pa. 1987). A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.
>
> *Commonwealth v. Busanet,* 54 A.3d 34, 45 (Pa. 2012) (citations formatted). Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the *Pierce* test." *Commonwealth v. Fitzgerald,* 979 A.2d 908, 910 (Pa.Super. 2009).

*Commonwealth v. Perzel,* 116 A.3d 670, 671–672 (Pa.Super. 2015).

Appellant claims that trial counsel was ineffective for not requesting a jury instruction on the law of self-defense given his testimony that he inadvertently struck a threatening Ms. Henderson with four "warning shots," which he aimed not at her but, instead, at the ground. It was by Appellant's own testimonial account of the event as an unintentional shooting, however, that he abandoned a self-defense defense and, consequently, lost any prerogative to request a self-defense instruction.

In **Commonwealth v. Philistin**, 53 A.3d 1, 12 (Pa. 2012), the Pennsylvania Supreme Court held that a defendant who admits only to an unintentional shooting foregoes a self-defense defense:

> "[T]he defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect one's self." **Commonwealth v. Harris**, 542 Pa. 134, 665 A.2d 1172, 1175 (1995) (citing **Commonwealth v. Hobson**, 484 Pa. 250, 398 A.2d 1364, 1368 (1979)). Likewise, an imperfect self-defense claim "'is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter.'" **Commonwealth v. Bracey**, 568 Pa. 264, 795 A.2d 935, 947 (2001) (quoting **Commonwealth v. Tilley**, 528 Pa. 125, 595 A.2d 575, 582 (1991)). *Thus, to maintain a self-defense or imperfect self-defense claim, appellant must admit he intentionally shot the officers to protect himself. Here, appellant claims he "fired at the ground," Appellant's Brief, at 64, not at the officers. Thus, self-defense or imperfect self-defense defenses are inapplicable, and trial counsel was not ineffective in failing to present them*.

**Philistin**, 53 A.3d at 12 (emphasis added). As Appellant's testimony brought his case within the ambit of **Philistin**, we discern no arguable merit

- 7 -

to Appellant's ineffectiveness claim. Accordingly, the PCRA court properly denied him relief.

Order is AFFIRMED.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017